OPINION OF THE COURT
Fuchsberg, J.
In the main, we are asked to say whether the admission at trial of an unavailable witness’ preliminary hearing testimony constituted an unconstitutional application of CPL 670.10 in violation of the right of confrontation. We find it did not.
Defendant was convicted, after a jury trial, of assault in the second degree and the Appellate Division has since affirmed. The charge stemmed from an incident in which he was alleged to have inflicted multiple stab wounds on his estranged “common-law wife”. When the case came on for trial, the People asserted that the victim, who was the sole identifying witness, had disappeared and that diligent attempts to discover her whereabouts had failed. After hearings to determine the question, Trial Term ruled that, with the exception of specified redactions, testimony she had given at a preliminary hearing could be read into evidence at trial. The remainder of the People’s case consisted essentially of the calling of a police officer, a hospital physician and the introduction of records, all of which bore on circumstances surrounding the assault rather than who committed it.
Largely a codification of common law, CPL 670.10, as pertinent, reads: “Under circumstances prescribed in this article, testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to section 180.60, or (c) an examination of such witness conditionally, conducted pursuant to article six hundred sixty, may, where otherwise admissible, be received into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the witness is unable *570 to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court” (emphasis added). (See Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 670.10, pp 190-191.)
It is defendant’s contention that the People’s efforts to obtain the missing witness’ personal presence at trial were too brief, too belated, too cursory and too halfhearted to meet the statute’s “due diligence” requirement. He further claims that the functional scope of the preliminary hearing and the limited nature of the cross-examination of the witness were too inadequate, when measured by confrontation values, to allow for the introduction of her testimony at trial. Elaborating on the latter point, he argues that, because of the early stage at which the preliminary hearing was held, his counsel’s investigation of the case at best was too incomplete to lay a foundation for effective cross-examination and that this deficiency was exacerbated by undue restriction by the court. Moreover, defendant also complains that, even if the court’s ruling to receive the witness’ preliminary hearing testimony had been proper, it was error to deny a protective application to delete his counsel’s cross-examination from the transcript to be read to the jury. And, finally, defendant insists that, because of the catalogue of deficiencies he alleges, the witness’ hearing testimony, concededly a sine qua non for making out a prima facie case, could not suffice, as a matter of law, to establish defendant’s guilt beyond a reasonable doubt.
Fundamental to the issues thus raised is the right of a defendant in a criminal case to confront an adverse witness, as guaranteed by both Federal and State Constitutions (US Const, 6th Arndt; NY Const, art I, § 6). This fair trial requirement not only exposes the witness to a face-to-face encounter, but opens the door to that most effective trial tool for testing truth, cross-examination. So vital is the latter that, with narrow and cautious exceptions, such as, for instance, those which permit the use of certain types of hearsay (with the inherent limitations on effective cross-examination that these bring in their wake), the general rule is that testimonial statements which cannot be sub *571 jected to this test must be excluded (5 Wigmore, Evidence [Chadbourn rev], §§ 1367, 1369, 1420).[1]
The corollary is that, for an exception to fall outside the constitutional constriction, it must carry an alternative, though different and perhaps somewhat lesser, assurance of reliability (Ohio v Roberts, 448 US 56, 66). Even then, it must first have met a threshold criterion of necessity (Barber v Page, 390 US 719, 722), for, without it, it is difficult to constitutionally justify resort to evidence whose reliability is not necessarily assured by confrontation tests.[2]
In the case here now, that the missing witness was both the individual upon whom the crime was perpetrated, as well as the only one to admit firsthand knowledge of its commission, went far to establish necessity. But this, standing alone, was not enough. Her unavailability also had to be established to satisfy the court that the prosecutor’s failure to produce her was not due to indifference or a strategic preference for presenting her testimony in the more sheltered form of hearing minutes rather than in the confrontational setting of a personal appearance on the stand. So, the statute, reflecting the spirit of the underlying constitutional prescriptions, demands a showing that the witness “cannot with due diligence be found” (see Ohio v Roberts, 448 US 56, 74, supra; Barber v Page, 390 US 719, 724-725, supra).
Putting these rules to the test, the trial court, after reviewing the circumstances and motives for her disappearance and the People’s efforts to locate her, found as a matter of fact that due diligence indeed had been employed. Based on the events covered by its inquiry on this subject, these may be said to have transpired between September 1, when the assault took place, and the follow *572 ing February 13, the date on which the trial court, acting pursuant to CPL 670.20,[3] was to grant the motion to introduce the witness’ testimony at trial. It was during this period, on September 11, that the preliminary hearing at which the witness testified, apparently without any reluctance, was held. Nothing untoward occurred thereafter until November 24, when the witness, accompanied by defendant’s counsel, called at the District Attorney’s office. She there informed the assistant in charge that she would prefer “to drop the charges”. He thereupon explained both that this was not a decision, for her to make and that the People intended to pursue the prosecution. Even after he so advised her, she at no time, then or thereafter, directly or indirectly, indicated that she would either refuse to testify or would absent herself from the trial.
It is nevertheless now the position of the defendant, aided by hindsight, that the People should have taken undescribed extraordinary steps to assure her availability at trial. Instead, the Assistant District Attorney did no more than keep her on a standby basis until Friday, February 2, when he telephoned her to arrange for her attendance in his office at 9:00 a.m. on Monday, February 5, the case having been transferred into a trial part for that day. She did not demur. He followed up by arranging to have a detective call on the witness personally on the intervening Sunday, February 4, to make certain she understood where and when she was to report; on this visit, the detective too encountered no lack of co-operation.
The next day, when she had not appeared, the prosecutor telephoned her apartment twice, reaching only her grown daughter, who related that her mother had left without *573 saying where she was going. Also on that day, the detective, armed with a subpoena, made two fruitless trips to the apartment. In the ensuing week, commencement of the trial proper having been held up meanwhile, daily phone calls by the prosecutor, who had procured a material witness order, and investigation now by two police officers, who, among other things, repeatedly visited the apartment, questioned neighbors, scoured the scene of the crime and checked at the neighboring public hospital, at the Missing Persons Bureau, at the Bureau of Criminal Investigation and at the local office at which the witness received her welfare checks, in the process gaining access to its records in their search for further leads, all brought them to but one dead end after another. On one of the visits to the apartment, they had, however, come across an unsigned handwritten note addressed to the daughter in which the writer announced her departure for an unstated New Jersey destination, whose whereabouts the investigators never were able to locate.
After learning the status of the search during the initial session of the 670.20 hearing on February 8, the Judge, concluding from a comparison of the note with the witness’ signature on the criminal complaint that the two were written by the same person, allowed the People to continue their efforts to find the witness while a jury was being selected. In the ensuing days, continuing their investigation under the prosecutor’s direction, the officers returned to the apartment, interviewed the superintendent of the building in which it was located, spoke to a local restaurateur reputed to be a close friend of the witness and to a miscellany of “street people”, all to no avail. By then, the court had also learned from counsel for the defendant that her client and the witness had been contemplating resumption of their life together. A final prosecutorial visit to the apartment on the morning of February 13, the day the hearing resumed, again was futile. This picture before it, the court found that “the conclusion is inescapable that she’s hiding” and that, under the circumstances, the People had “exercised due diligence”. We cannot say that these findings, since affirmed by the Appellate Division, were *574 unsupported by evidence as a matter of law (see People v Wharton, 46 NY2d 924, 925).[4]
The witness’ unavailability established, we now turn to the question of the reliability of her former testimony. In this regard, we first note that the solemnity of the occasion on which the preliminary hearing testimony was adduced in the case before us now was emphasized by the defendant’s presence as a matter of right, his representation by counsel, the witness’ testifying under oath, the furnishing of an opportunity for her cross-examination and, subject to exceptions not material to this case, adherence, to the rule against hearsay (CPL 180.60). Furthermore, the hearing, “a virtual minitrial of the prima facie case” (People v Hodge, 53 NY2d 313, 318), delved into substantially the same subject matter as did the trial on which it later was to be used. This identity was calculated to induce, as it did, cross-examination relevant to the purposes to which the examination ultimately was put (see People v Simmons, 36 NY2d 126, 130).
But, withal, since parties, at times — for tactical or other reasons — may, as with a live witness at trial, choose not to cross-examine, it was only a fair opportunity to do so which had to have been provided when the former testimony was given (McCormick, Evidence [2d ed], § 255). Overall, in the quest for reliability and fairness, the foregoing factors, the deference due each of them varying from case to case, are to be weighed with practicality rather than pedantry (5 Wigmore, Evidence [Chadbourn rev], § 1387). For, in the end, the “constitutional provision was not intended to secure to the accused person the right to be confronted with the witnesses against him upon his final trial; but to protect him against ex parte affidavits and depositions taken in his absence, as was frequently the practice in England at an early day” (People v Fish, 125 NY 136,152).[5] *575 Here, the preliminary hearing at which the witness testified, though guilt or innocence did not hang in the balance, was to determine whether there was enough evidence to hold the defendant on the very crime for which he was convicted. Accordingly, the subject and the scope of the inquiry, even if it never could be foursquare with what might have been developed if essayed anew at trial, was sufficiently close to satisfy the identity factor (Ohio v Roberts, 448 US 56, supra; California v Green, 399 US 149).
The record also discloses that the right to cross-examine at the preliminary hearing was not frustrated in any meaningful way. The criminal episode was a relatively simple one. A justification defense was never raised. To the extent that the relationship between defendant and the witness or the facts concerning the crime or personal information on the witness could bear on her credibility, these had to be well-known to the defendant, the couple having recently lived together in their “common law” relationship for an entire year. Surely, counsel had access to him as a source of this information even as the preliminary hearing testimony was unfolding. In fact, defense counsel’s cross-examination of the witness on the sequence of events leading up to and encompassing the assault and on her prior knowledge of the defendant was far from perfunctory.
In particular, examination of the transcript indicates that defendant’s claim that the hearing Judge had been too restrictive in his rulings on questions relating to defendant’s sobriety at the time of the assault does not withstand scrutiny. Only a single objection to a question in this line of inquiry, presumably on the issue of intent, was sustained and, further questioning on this subject having thereafter been pursued by counsel, replies were elicited that, though the defendant appeared to have been drinking, he was not drunk. In short, the court never cut off the inquiry. Accordingly, counsel’s argument that the single adverse ruling inhibited her from exploring the matter is simply without foundation.
*576 Indeed, the defendant’s detailing of his other plaints of prejudice is equally insubstantial. For instance, pointing to the witness’ hearing testimony that the closing of her stab wounds had required about 70 sutures, inclusive of 35 to 40 in her chest, defendant contrasts her statement with that made four months later at the time of trial by a hospital intern who, though protesting that his recollection was no longer clear, ventured to estimate that her eight wounds needed some 30 or 40 sutures. Obviously, nothing of consequence turned on this difference. In any event, counsel might have subpoenaed the hospital record and intern to the hearing (CPL 180.60, subd 7; People v Hodge, 53 NY2d 313, 319, supra) and, at trial, for what it might prove, it was put in evidence and was available to controvert the missing witness’ testimony on this subject.
Along the same line, defendant would attach significance to the missing witness’ testimony that the stabbing took place in a “numbers” club, while a police officer, who arrived at the scene after she had fled for her life to the sidewalk in front of the premises where he found her hysterical and bleeding profusely, recorded that area as the location of the crime; here, too, officer and records, like doctor and records, were fully available, for whatever they were worth, for juxtaposing against the reading of the transcript at trial. Even taken together, these can hardly have sufficed to legally undermine the qualifying effect of the criteria for trustworthiness which otherwise surrounded the taking of the witness’ testimony as it was given at the preliminary hearing.
And alleged aggrievement over the fact that the Grand Jury minutes were not available for defense use at the preliminary hearing brooks reality; since preliminary hearings, generally characterized by their promptness, almost always precede Grand Jury hearings, such a standard would almost always interdict the necessitous trial use of preliminary hearing testimony.
Consequently, though reliability is ordinarily to be judged on the circumstances which present themselves at the timé nisi prius passes on admissibility, even in retrospect it could not be said, as a matter of law, that in this case the determination of reliability implicit in the findings by both courts below was not warranted. *577 This said, comment is in order on defendant’s insistence that the trial court, which, pursuant to the limited authorization of CPL 670.20, had not hesitated to pass upon and redact specific questions, answers and colloquy from the text to be read to the jury, also should have permitted defense counsel to withdraw her preliminary hearing cross-examination of the witness in its entirety. The argument is that, since a defendant in a criminal case is under no compulsion to take the stand, present evidence or even ask questions at his trial, a challenge to a witness by cross-examination at a probable cause hearing is not a waiver of the right not to do so for other purposes and, particularly, of the right not to do so at trial. The short answer, however, is that the preliminary hearing testimony of the witness was not the testimony of the defendant and, when given, the portions elicited from the witness on cross were no less an integral part of the testimony than that adduced on direct. Once uttered, the testimony was not the exclusive property of either party. If one decided to. introduce only part of it in evidence, fairness would have permitted the adversary to qualify it by introducing all or part of the rest (McCormick, Evidence [2d ed], §260). Avoidance of distortion and half-truth demands no less. (See People v Rein-gold, 44 AD2d 191, 197-198 [Wither, J.P.].)
Finally, we also reject defendant’s point that “since no other evidence establishing appellant’s commission of the assault [other than the prosecuting witness’ hearing testimony] was presented, appellant’s conviction is not based upon legally sufficient evidence”. In this connection, it, of course, must be acknowledged that it would have been far preferable for this testimony, on direct and on cross, to have been delivered live within eyesight and earshot of the jurors and at a time when nothing less than guilt or innocence was at stake. But necessity having compelled the use of testimony developed under less ideal circumstances, a precautionary inquiry to determine whether there were sufficient “indicia of reliability” for the fact finder to have “a satisfactory basis for evaluating the truth of the prior statement” was in order (Dutton v Evans, 400 US 74, 89; see Mancusi v Stubbs, 408 US 204, 214; California v Green, 399 US 149,161, supra). Having survived this *578 search — one beyond that to which proof offered under conventional circumstances is subjected — the evidence whose reliability here was so certified became part of the record of the trial on a footing, subject only to its ultimate persuasiveness with the triers of fact, equal to that accorded testimony given directly at trial for the first time.
In particular, the testimony so admitted required no corroboration. For unlike the contrary principles which prevailed under Romanesque and ecclesiastical systems of law, the common law of England, as followed in the United States, always emphasizing quality rather than quantity of witnesses, has generally refused to adopt numerical witness requirements (see 7 Wigmore, Evidence [Chadbourn rev], §§2032-2044). As a consequence, while a single, though unimpeached, witness need not be believed, so too is the testimony of a single witness sufficient to support a conviction. For “[o]rdinarily the trier of fact is solely responsible for determining the credibility of witnesses” (People v Daniels, 37 NY2d 624, 628). The exceptions, limited originally to treason and perjury, in New York are few and statutorily engrafted (e.g., CPL 60.50 [corroboration of a defendant’s confession]; CPL 60.22 [accomplice testimony]; Penal Law, § 130.16 [victim of sex crime]; Penal Law, § 210.50 [perjury]; CPL 60.20 [unsworn testimony of a child under 12, or witness unable to understand the nature of an oath]). There is no such requirement for prior testimony either in constitutional or statutory law.
All this does not mean, however, that every time a prima facie case is dependent on the introduction of a prior statement the fact that it has overcome the confrontation hurdle automatically will insulate the case against dismissal. There may be instances in which, though the circumstances surrounding prior testimony have rendered it admissible, in the context of the entire case as it develops, the prior testimony, by itself, will be found insufficient to support a guilty verdict beyond a reasonable doubt. But here, the People not only met the test of trustworthiness posed by the confrontation issue, but, on the record already detailed, the prior testimony could serve as a basis on which to uphold the conviction.[6]
*579 For all these reasons, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones and Meyer concur; Judges Gabrielli and Wachtler concur in result only.
Order affirmed.

. While the admission of such a testimonial statement is at times said to be justified as an exception to the rule against hearsay, strictly speaking it may be more accurate, conceptually, to recognize that, the right to cross-examine having been respected, it goes in because it is not violative of the rule against hearsay rather than because it is an exception to it (5 Wigmore, Evidence [Chadbourn rev], § 1370). In so observing, we do not gainsay the recognized fact that the “hearsay rules and the Confrontation Clause are generally designed to protect similar values” (California v Green, 399 US 149, 155).

. In the present case, there was a confrontation between the parties at the time of the preliminary hearing. We, therefore, do not find it necessary to address circumstances in which no confrontation ever takes place.

. CPL 670.20 provides that a party “who desires to offer in evidence testimony of a witness given in a previous action or proceeding as provided in section 670.10, must so move, either in writing or orally in open court, and must submit to the court, and serve a copy thereof upon the adverse party, an authenticated transcript of the testimony *** sought to be introduced. Such moving party must further state facts showing that personal attendance of the witness in question is precluded by some factor specified in subdivision one of section 670.10. In determining the motion, the court, with opportunity for both parties to be heard, must make inquiry and conduct a hearing to determine whether personal attendance of the witness is so precluded. If the court determines that such is the case and grants the motion, the moving party may introduce the transcript in evidence and read into evidence the testimony contained therein. In such case, the adverse party may register any objection or protest thereto that he would be entitled to register were the witness testifying in person, and the court must rule thereon”.

. Though one of the Justices of the Appellate Division dissented on an unrelated issue, the five members of that court who heard the case were unanimous in supporting the trial use of the witness’ preliminary hearing testimony.

. The Sixth Amendment to the United States Constitution, binding on the States by reason of the Fourteenth Amendment (Pointer v Texas, 380 US 400, 404-405), reads: ‘“in all criminal cases the accused shall enjoy the right “to be confronted with the witnesses against him” ’ ”.

. As to the defendant’s points regarding prosecutorial misconduct on summation, as *579 to which no motion for mistrial was ever made, we find these to have been unpreserved or harmless for the reasons stated in the memorandum of the majority at the Appellate Division.