*425 OPINION OF THE COURT
Titone, J.
Defendant was convicted of murdering one James McKinley and attempting a criminal assault against one Thomas Barrett. The charges arose as a result of defendant’s participation in a violent melee, which grew out of an earlier confrontation between defendant and the two victims. The present appeal requires us to consider whether the Wade hearing testimony of an eyewitness who has since become unavailable is admissible at trial under the statutory exception to the rule against hearsay that is contained in CPL 670.10. A further problem is presented because of the admission at trial of certain out-of-court statements made by two, separately prosecuted codefendants. We conclude that the Wade hearing testimony was not admissible under CPL 670.10. Nonetheless, although this evidence and the concededly inadmissible codefendants’ statements should not have been placed before the jury, we hold that the conviction should be affirmed because, in light of the other evidence of guilt, these errors were harmless.
I. FACTUAL BACKGROUND
The People’s Evidence
The case against defendant consisted principally of live eyewitness testimony describing both the preliminary altercation and the confrontation that led immediately to McKinley’s death and Barrett’s injury. Eileen Morgan, Barrett’s girlfriend, and defendant’s two companions, James Santiago and Franklin Villar, all testified that defendant initially encountered Barrett and McKinley on Palisade Avenue in Yonkers, *426 New York. The men had a quarrel that quickly degenerated into a fist fight, which ended when Barrett pulled out a long metallic instrument, identified as either a knife or an icepick, and defendant ran away. Defendant, Santiago and Villar then located and enlisted the aid of three acquaintances, James Ortiz, Danny Mercado and Robert Ramos, ostensibly to aid defendant in a planned second fight with Barrett.
After driving around in search of McKinley and Barrett, defendant and his associates finally located them having a conversation with Zina Everett and Donnita Bunch in the lobby of Morgan’s apartment building on School Street in Yonkers. According to Bunch’s trial testimony, a group of three or four individuals, including defendant, entered the lobby.[1] Bunch testified that defendant, whom she knew from school, quickly "jumped” and then began punching McKinley on the left side of his chest. The "punching” motion, which, as Bunch demonstrated for the jury, resembled a stabbing motion, was repeated some three times. Bunch, however, did not see a weapon in defendant’s hands from her vantage point of approximately five feet away.
Shortly thereafter, gunshots were heard. Bunch and Everett ran into a nearby hallway, Morgan looked out her apartment window in time to see defendant and three others chasing McKinley and Barrett, and a third eyewitness, Eleanor Brown, also saw a chase from her apartment window. Brown and Morgan both stated that one of the men stopped and, with arms extended, fired twice at the men who were being chased. Morgan, Santiago and Villar all saw McKinley fall to the ground, pick himself up and run into a nearby car. Villar identified Ortiz as the shooter, but Ortiz told his companions that he had only begun shooting after he saw Mercado doing so. Mercado also acknowledged shooting "the guy” who hit him with a bottle. Barrett was subsequently treated for a gunshot wound. McKinley had a superficial gunshot wound, a superficial abrasion and two deep stab wounds. McKinley ultimately died as a result of these wounds, which penetrated his heart and lungs.
The Disputed Pretrial Statements
In addition to the foregoing eyewitness and forensic testimony, the People introduced the pretrial statements that are *427 the focus of this appeal. The first of these was a redacted transcript of the Wade hearing testimony given by Zina Everett, which was read to the jury as part of the People’s evidence-in-chief. Everett, who had become unavailable in the interim, gave testimony at the Wade hearing that essentially paralleled Bunch’s trial testimony. The only significant differences between Everett’s Wade hearing testimony and Bunch’s trial testimony was Everett’s assertion that she had seen some unidentified object in defendant’s hand.
Also admitted at defendant’s trial were redacted versions of Ortiz’s and Mercado’s statements to police after the incident. Ortiz’s statement described the events leading up to the School Street confrontation in a manner similar to the description provided by Santiago and Villar. Ortiz, however, claimed that he had waited in the car while "others” went inside the building and that, after some gunshots were heard, two of the "others” returned to the car and one of these returnees boasted that he had "paid them back” and "had stabbed him.” Mercado’s redacted statement admitted that he (Mercado) had been present at the School Street incident, that he had been hit by a bottle and that someone else had been stabbed. Although Mercado and Ortiz were not tried with defendant,[2] the trial court instructed the jury that their statements were admitted "to establish the allegation in the indictment that a number of individuals were aiding, abetting and acting in concert with each other in the commission of these alleged crimes.” In addition, in a posttrial written decision the trial court indicated that the Mercado and Ortiz statements had been admitted as declarations against penal interest.
Defendant was convicted of second degree murder and attempted first degree assault. On appeal, the Appellate Division held that defendant’s appellate arguments concerning the admission of the Everett, Ortiz and Mercado statements were adequately preserved by timely and specific objection, that the arguments were meritorious and that the three statements should not have been admitted. The court nonetheless affirmed the convictions, since, in light of the overwhelming evidence of guilt, it found the errors to be harmless. We agree with the Appellate Division’s conclusion and, accordingly, affirm.
*428 II. DISCUSSION
Admissibility of The Hearsay Evidence
To be admissible, the prior testimony of Zina Everett, which was otherwise classifiable as hearsay, had to satisfy CPL 670.10 (see, People v Harding, 37 NY2d 130, 133-134; see also, People v Gonzalez, 54 NY2d 729). That statute provides: "Under circumstances prescribed in this article, testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to [CPL] 180.60, or (c) an examination of such witness conditionally, conducted pursuant to article [660], may * * * be received into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the witness is unable to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found”. The "subsequent proceedings” at which such testimony may be admitted include "[a]ny proceeding constituting a part of a criminal action based upon the charge or charges which were pending against the defendant at the time of the witness’s testimony and to which such testimony related”.
The undisturbed findings of the courts below that the People exercised the necessary diligence in their unsuccessful efforts to locate Everett are supported by the record and, consequently, cannot be disturbed by this court (see, People v Arroyo, 54 NY2d 567, 573-574, cert denied 456 US 979). Thus, that element of the statutory requirements has been satisfied and the only remaining question for us to resolve is whether the witness’s prior testimony falls within the class of evidence that the Legislature intended to render admissible by enacting CPL 670.10.
It is undisputed that the Wade hearing at which Everett’s testimony was given is not literally within any of the three categories of prior proceedings delineated in the statute, i.e., felony hearings, article 660 conditional examinations[3] and trials of accusatory instruments. Although conducted in close temporal proximity to the commencement of defendant’s trial, the Wade hearing was not part of the "trial” itself, which, in *429 defendant’s case, began only after the jury was sworn (CPL 1.20 [11]; see, People v Anderson, 16 NY2d 282, 288). Indeed, the Legislature has specifically provided that, in most instances, a motion to suppress evidence must be made and determined before the formal commencement of trial (CPL 255.20, 710.40). Thus, by definition, a Wade suppression hearing such as that held in defendant’s case cannot be considered part of the "trial.”
Although it recognized that the Wade hearing at which Everett testified was not within the literal terms of CPL 670.10, the trial court decided to adopt a "more expansive reading” of the statute. Such a reading was justified, in the court’s view, because "[i]t defies logic to believe that the Legislature would allow the testimony at so restrictive a hearing as a felony hearing to be admitted at trial [see, CPL 670.10 (1) (b)] and not allow testimony taken at a previous [suppression] proceeding which was more expansive in scope and in which the witness was adequately cross-examined” (121 Misc 2d 1073, 1075). We disagree.
First, although CPL 670.10 is "[l]argely a codification of common-law” principles (People v Arroyo, supra, at 569), this court has already rejected the argument that the statutory terms and their fair import are not exclusive (People v Harding, supra, at 133-134). As the court has noted, the statute contains "three carefully worded and enumerated exceptions” to the general rule excluding hearsay evidence (id., at 134), suggesting that the Legislature intended the statute’s reach to be relatively narrow and limited to its precise terms. Further, the general rule that "[i]n criminal matters the courts must be more circumspect” (id., at 134) counsels against a construction that would extend CPL 670.10 well beyond the "fair import” of its language.
Second, a legislative distinction between felony hearings and suppression hearings is not, in this context, as illogical as the trial court’s opinion suggests. A felony hearing is "a virtual minitrial of the [People’s] prima facie case” on the merits (People v Hodge, 53 NY2d 313, 318). Consequently, the testimony, and related cross-examination, at the felony hearing will ordinarily "delve[] into substantially the same subject matter as [will] the trial [at] which it later [may] be used.” (People v Arroyo, supra, at 574.) In contrast, the focus of suppression hearings is, typically, the propriety of certain challenged official conduct and the relationship between the *430 unlawful official conduct, if any, and the evidence the defendant seeks to exclude. Thus, areas of importance to the substantive issues at trial may be inadequately — or not at all —explored. Moreover, because no jury is present and the question of guilt or innocence is not at stake, defense counsel may pursue strategies that would be highly prejudicial to the client in other contexts, such as eliciting facts suggestive of the client’s guilt or withholding objection to prosecution testimony that might be harmful to the client’s position.
Finally, the trial court’s reliance here on the breadth of the opportunity to cross-examine witnesses that suppression hearings, as distinguished from felony hearings, afford is misplaced. An adequate opportunity to cross-examine at the prior proceeding is an additional, constitutional requirement for the admissibility of prior testimony that otherwise satisfies CPL 670.10; it is not a substitute for the satisfaction of the clear statutory terms (see, People v Arroyo, supra, at 575; People v Simmons, 36 NY2d 126; People v Prince, 106 AD2d 521, 522, affd on opn below 66 NY2d 935).
The People’s arguments based on People v Anderson (supra) are similarly unpersuasive. In that case, the court held that a suppression hearing should be deemed part of the trial for purposes of section 356 of the Code of Criminal Procedure (now CPL 260.20), the statutory provision delineating the defendant’s right to be personally present at a trial for a felony. While acknowledging that "[t]he suppression hearing is, of course, not within the specific meaning of 'trial’ as heretofore defined,” the court felt unconstrained by that technical definition because it was " 'not in keeping with the purpose of the statute before [it]’ ” (16 NY2d, at 288, supra, quoting People ex rel. Steckler v Warden, 259 NY 430, 432-433), i.e., " 'to prevent the ancient evil of secret trials * * * and to guarantee the defendant’s right to be present at all important stages of his trial.’ ” (16 NY2d, at 287, supra, quoting People ex rel. Lupo v Fay, 13 NY2d 253, 256.) Such a rationale is inapplicable here, where the purpose of the statute in issue, namely CPL 670.10, is simply to create a limited exception to a common-law evidentiary rule.
In short, the trial court’s decision to admit Everett’s Wade hearing testimony was neither authorized by the statutory language nor by any policy considerations supporting a more expansive interpretation of the provision. Accordingly, the decision was error. Since the People now concede, as they *431 must, that the admission of Ortiz’s and Mercado’s redacted out-of-court statements was also erroneous, it only remains for us to consider whether any of these errors, either alone or collectively, requires reversal. We agree with the Appellate Division, which answered this question in the negative.
Harmless Error
CPL 470.05 (1) directs us to "determine an appeal without regard to technical errors or defects which do not affect the substantial rights of the parties.” Further, there exists a large body of case law establishing the standards to be used in determining whether a particular legal error requires reversal in light of the evidence and issues presented in an individual case. How demanding these standards are depends, at least in part, upon whether the error in question is of constitutional magnitude. As a general matter, the standard for nonconstitutional error, which is governed solely by State law, requires reversal if the properly admitted evidence was not "overwhelming” and there is a "significant probability * * * that the jury would have acquitted the defendant had it not been for the error or errors which occurred.” (People v Crimmins, 36 NY2d 230, 242.) Constitutional error, in contrast, must lead to reversal unless there is no reasonable possibility that the error might have contributed to the conviction (Chapman v California, 386 US 18; Fahy v Connecticut, 375 US 85; People v Crimmins, supra, at 237). Even this highly exacting harmless-error standard, however, does not demand that guilt be proven "indisputably” (People v Schaeffer, 56 NY2d 448, 455).
 Here, the admission of the Everett statement involved only the erroneous construction of a State statute, i.e., CPL 670.10.[4] On the other hand, the admission of the Ortiz and Mercado pretrial statements did rise to the level of a constitutional violation. As the Appellate Division correctly concluded, the statements of these codefendants did not have the indicia of reliability that the Constitution requires (see, Ohio v Rob *432 erts, 448 US 56, 74; People v Sanders, 56 NY2d 51, 64-65). Further, the need to resort to the witnesses’ out-of-court statements was not established by a specific showing that they were unavailable because of an actual refusal to testify or some other difficulty (see, Ohio v Roberts, supra; People v Sanders, supra; cf., United States v Inadi, 475 US 387 [declarant’s unavailability not a constitutional requirement for admission of coconspirators’ out-of-court declarations]). Accordingly, the erroneous admission of the latter statements requires application of the more stringent harmless-error standard.
Even under this standard, the Appellate Division’s conclusion on the harmless error question was clearly correct. The People’s case against defendant, which was based largely on eyewitness testimony, was essentially unimpeached. Indeed, defendant did not seriously contest his participation as a leading actor in the violence that led to McKinley’s death. Rather, he merely sought to persuade the jury that a reasonable doubt existed about his responsibility for McKinley’s stab wounds.
As to this issue, however, there is no reasonable possibility that the erroneous admission of the Ortiz and Mercado statements contributed to the outcome (see, People v Crimmins, supra, at 237). The eyewitness testimony established that defendant "punched” McKinley in the chest using a gesture that unquestionably resembled a stabbing motion. The several eyewitness accounts of the subsequent chase established that, after the one-on-one encounter between defendant and McKinley, none of defendant’s confederates got close enough to McKinley to inflict stab wounds. Since McKinley died of stab wounds he received at some point during the melee, the inference is virtually inescapable that defendant is, in fact, the person who stabbed him. Indeed, a contrary inference could not rationally have been drawn without resort to impermissible speculation.
In light of this highly persuasive evidence, which is certainly not rendered any weaker solely by virtue of its circumstantial nature, the significance of the erroneously admitted codefendants’ statements was, at best, marginal. Mercado’s statement, in which he admitted his own presence at the incident and acknowledged that someone had been "stabbed” added nothing substantive to the People’s case against defendant on this issue. Ortiz’s statement, which could *433 fairly be construed as conveying an admission by defendant that he had "stabbed” McKinley, did not meaningfully enhance the People’s case for the simple reason that the evidence establishing defendant’s responsibility for the stabbing was already all but ironclad. A fortiori, the trial court’s nonconstitutional error in admitting Everett’s Wade hearing testimony, which merely added that defendant may have had "something” in this hand when he "punched” McKinley’s chest, does not provide a basis for reversing this conviction under the less stringent harmless-error standard of review of such errors.
We have examined defendant’s remaining contentions and found them to be either unpreserved or lacking in merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa, concur.
Order affirmed.

. According to their own testimony, Santiago and Villar remained outside the building in the car.

. During jury selection, the court found it necessary to grant motions by Mercado and Ortiz for a mistrial. The proceeding then went forward against defendant alone.

. CPL article 660 provides a procedural mechanism for either party to a criminal action to secure and preserve the testimony of potential witnesses where there is reasonable cause to believe that the witness may subsequently become unavailable.

. The requirements of the Federal Constitution’s Confrontation Clause were satisfied by the defendant’s presence at the Wade hearing, the opportunity defendant was given to cross-examine Everett and, finally, the demonstrated need to use Everett’s Wade testimony because of her present unavailability (see, Ohio v Roberts, 448 US 56, 74; Barber v Page, 390 US 719; People v Arroyo, 54 NY2d 567, 570-575). Since there is no indication that defendant’s opportunity to cross-examine Everett at the Wade hearing was actually impaired, the error in admitting the testimony was not of constitutional magnitude.