■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS DIAZ, Also Known as FULTON GUEVARA, Appellant. [718 NYS2d 369] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Eng, J.), rendered May 27, 1997, convicting him of robbery in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

On April 4, 1995, the defendant accosted Oscar Leal on a street in Queens and threatened to shoot him unless he surrendered his valuables. The defendant took a 20-dollar bill and a "Swiss Army" watch from Leal, and walked away. Leal recruited a friend and followed the defendant until he could point him out to two officers in a passing patrol car. The officers apprehended the defendant and found Leal's Swiss Army watch and a 20-dollar bill in his pocket.

The defendant's first three trials ended in mistrials. The record indicates that Leal returned to his native Mexico immediately after testifying at the third trial, and before a mistrial was declared.

Following the third trial, the People requested permission to

read Leal's testimony at a subsequent trial, and a hearing was held pursuant to CPL 670.20. The evidence adduced at the hearing established that the People were unable to secure Leal's attendance notwithstanding a good faith effort to do so. Two detectives sought Leal at his former Queens address, interviewed his neighbors, and finally spoke to his cousin. An Assistant District Attorney (hereinafter ADA) contacted Leal's former employer, and another ADA, as well as a detective, finally spoke to Leal at his home in Mexico. These officials offered to pay Leal's expenses to return to New York to testify at a fourth trial, but Leal was emphatic that he would not return. The hearing court determined that, under these circumstances, the People exercised due diligence to secure Leal's attendance (*see, People v Arroyo,* 54 NY2d 567, *cert denied* 456 US 979; *see also, Ohio v Roberts,* 448 US 56, 74) and, therefore, Leal's prior sworn testimony could be read to the jury.

The defendant argues that the admission at the fourth trial of Leal's prior testimony pursuant to CPL 670.20 constituted a violation of his right of confrontation. We disagree.

The statutory procedures set forth in CPL 670.20 were complied with. There is no question that Leal was "unable" to testify at the fourth trial, as that term is defined in CPL 670.10. It was stipulated by the parties that Leal had been in this country as an illegal immigrant, that he returned to Mexico after the third trial, where he was at the time of the fourth trial, and that he had refused to return to New York notwithstanding the People's offer to reimburse his transportation costs. The police and the District Attorney's office were diligent in locating Leal and were also diligent in seeking to have him voluntarily return to this country. Contrary to the implication by the dissent, there were no legal means available to compel Leal to return to New York (*see, Mancusi v Stubbs,* 408 US 204; *People v Carracedo,* 228 AD2d 199, *affd* 89 NY2d 1059). A subpoena would have no extra-territorial effect. The procedures set forth in CPL article 640 (Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Proceedings) are not applicable here since Leal was not in United States territory.

In *Mancusi v Stubbs* (*supra,* at 212), then Justice Rehnquist, after discussing the methods available to compel the attendance of a witness who is found in another State or who is incarcerated in a Federal or State institution, stated: "There have been, however, no corresponding developments in the area of obtaining witnesses between this country and foreign nations. Upon discovering that [the witness] resided in a

foreign nation, the State of Tennessee, so far as the record shows, was powerless to compel his attendance at the second trial, either through its own process or through established procedures depending on the voluntary assistance of another government."

Notably, CPL article 670, traces its origin to section 8 of the 1881 Code of Criminal Procedure, which contained the statutory right of confrontation (there was no such right in the New York Constitution at the time), as well as the exception permitting the use at trial of a written deposition taken by a magistrate if the declarant was unavailable. In *People v Qualey* (210 NY 202, 206), Chief Judge Bartlett stated: "The constitutionality, however, of that portion of section 8 of the Code of Criminal Procedure which permits the reading of the deposition of a deceased person whose testimony has been taken in the presence of the defendant with an opportunity for cross-examination, has been so frequently affirmed as to be no longer a matter of doubt."

Thus, CPL article 670, as its predecessor, implements the provisions of the Confrontation Clause of the United States Constitution. In fact, the "due diligence" twice referred to in CPL 670.10 has its basis in the Federal cases requiring "due diligence" in connection with securing the attendance of witnesses to comport with the requirements of the Confrontation Clause. Here, the People exercised due diligence in locating Leal and in seeking his voluntary attendance. There were no legal means for the People to compel Leal to attend the fourth trial.

Further, Leal's prior testimony was per se reliable because it was on the same subject matter, was taken under oath, was subject to cross-examination, and was adduced pursuant to the rules of evidence. Notably, it is not argued that the cross-examination of that testimony was in any way inadequate (*see, People v Arroyo, supra*).

We disagree with the dissent's apparent position that even though all of the requirements of the Confrontation Clause and CPL article 670 have been met, it was still error to permit the use of Leal's prior testimony since the jury present at the fourth trial was not able to assess Leal's demeanor. Such a position is contrary to the provisions of CPL article 670.

The defendant's further argument that the evidence was legally insufficient to support his conviction is unpreserved for appellate review. In any event, viewing the evidence in the light most favorable to the People, we conclude that a rational trier of fact could have found the essential elements of robbery

in the second degree beyond a reasonable doubt (*see, People v Contes,* 60 NY2d 620, 621).

Finally, the mere fact that the defendant was tried four times does not, without more, constitute a violation of due process (*see, People v Kirby,* 92 AD2d 848, 849), and contrary to the defendant's arguments, dismissal of the indictment was not warranted in the interests of justice (*see, People v Bebee,* 175 AD2d 250; *People v Ortiz,* 152 AD2d 755; *People v Clayton,* 41 AD2d 204; CPL 210.40).

The defendant's remaining contentions are either unpreserved for appellate review or without merit. Bracken, J. P., Thompson and Sullivan, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment and order a new trial with the following memorandum: I respectfully dissent and vote to reverse the judgment and order a new trial.

The defendant was indicted for the crimes of robbery in the second degree and criminal possession of stolen property in the fifth degree based upon an incident which occurred on April 4, 1995. The defendant was accused of approaching one Oscar Leal, placing his jacket with an object therein against Leal's stomach and threatening to shoot him if he did not give up his property. The defendant then allegedly took Leal's Swiss Army watch and $20 and walked away.

Leal immediately told his friend whom he was intending to visit that he had been robbed. Both men proceeded to attempt to locate the perpetrator, noticed a police car, and at virtually the same time, noticed the defendant entering a cab. The police apprehended the defendant, found the Swiss Army watch and a $20 bill, as well as a black jacket and a plastic bag containing a 10-inch long zucchini, the purported robbery weapon.

The defendant was tried three successive times and all three times there was a mistrial on the charge of robbery in the second degree. During the second trial, after two days of deliberations, the jury convicted the defendant of criminal possession of stolen property in the fifth degree for which he was ultimately sentenced to a term of imprisonment of one year on May 30, 1996, but the jury was deadlocked on the count of robbery in the second degree.

The only witnesses called by the People during the three previous trials were the arresting officer and the complainant, Oscar Leal. At the conclusion of the third trial, Leal, who was in the United States illegally, returned to Mexico.

During the first three trials, Leal testified through the assistance of a Spanish interpreter. During the course of his testimony he apparently would not look at the accused and at one point during the second trial, was reluctant to identify the defendant to the jury. The People had difficulty obtaining his attendance at the third trial and even had to go to his apartment to wake him up and bring him to court. At the third trial, Leal even resisted identifying the defendant, electing instead to describe what the defendant was wearing. At the conclusion of the third trial, the defendant was offered an *Alford* plea (*see, North Carolina v Alford,* 400 US 25) with a minimum sentence which he refused.

The People began proceedings to commence a fourth trial but were unable to secure Leal's presence in court as a witness. Employees of the prosecutor's office contacted Leal by telephone at his residence in Mexico speaking to him in English. He replied that he would not return for a fourth trial. There was a dispute as to the witness's ability to understand English. However, it was stipulated that in each of the first three trials, the services of a Spanish interpreter were employed. The Supreme Court determined that the People exercised due diligence to obtain Leal's appearance at the fourth trial and permitted the transcripts of the previous trials to be read to the jury. It also ruled in the interest of fairness, each side could present witnesses who had observed Leal's testimony during the previous trials in an effort to convey to the jury reliable impressions of Leal's demeanor. Defense counsel did not elect to call any witnesses to testify about Leal's demeanor during the previous three trials, concluding that to do so would reverse the burden of proof.

In order to prove their case, the People chose to have the court stenographer read Leal's direct testimony from the second trial. The defense, in turn, had the stenographer read his cross-examination from the third trial. At the conclusion of the trial, the defendant was convicted of robbery in the second degree and on May 27, 1997, was sentenced, as a persistent felony offender, to a term of imprisonment of 18 years to life.

This appeal concerns the defendant's right pursuant to the Sixth Amendment to the United States Constitution to confront the only witness to identify him.

As noted, the People's case turned on the credibility and reliability of Leal. Critical to assessing credibility is the ability to observe the demeanor of a witness and plainly, under the circumstances of this case, permitting the People to use Leal's testimony read from prior transcripts violated the defendant's right of confrontation and due process.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right "to be confronted with the witnesses against him" (*People v Cintron,* 75 NY2d 249, 268; *see,* US Constitution 6th Amendment; NY Constitution, article 1, § 6). The core protection afforded by the clause is the right of the accused to a "face-to-face meeting with witnesses appearing before the trier of fact" (*Coy v Iowa,* 487 US 1012, 1016). Fundamental to the right of confrontation, i.e., that the witness testify in the presence of the defendant and be subject to cross-examination, is the requirement that the witness testify in the *presence of the jury* so that it is able to assess the demeanor and credibility of the witness under the most effective tool for testing truth, cross-examination (*see, People v Cintron, supra,* at 268; *People v Arroyo,* 54 NY2d 567, 570). Indeed, the trial court, in its charge to the jury at the fourth trial, stated that "one of the most important means by which a juror may evaluate the credibility * * * of a witness is by observing the appearance and demeanor, the body language * * * of the witness."

To justify the People's use of a witness's prior testimony, whose reliability is not necessarily assured by confrontation tests, the People must establish that the testimony is necessary and that the witness cannot with due diligence be found (*see, Ohio v Roberts,* 448 US 56, 74; *see, People v Arroyo, supra;* CPL 670.10). Here, while the necessity of using Leal's prior testimony was demonstrated, i.e., he was the individual upon whom the crime was perpetrated and the only witness who could identify the defendant, the efforts of the People to obtain Leal's presence at the trial did not meet the statute's "due diligence" requirement.

CPL 670.10 (1) insofar as relevant, provides: "Under the circumstances prescribed in this article, testimony given by a witness * * * may, where otherwise admissible, be received into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the witness is unable to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court."

Here, the People did little to insure Leal's presence after his testimony during the third trial despite knowing that Leal planned to return to Mexico (although not precisely when) and that his testimony was critical to the case, there being, at that point, two previous mistrials. Further, at the conclusion of the third mistrial, the People took no steps to insure that Leal

remained available. Once the People began to attempt to locate Leal in an effort to procure his testimony at the fourth trial, their efforts were too cursory to meet the constitutional requirements, including the failure to contact Mexican or American authorities to procure Leal's appearance through official channels (*cf., United States v Curbello,* 940 F2d 1503; *United States v Casamento,* 887 F2d 1141, 1169). Indeed, the only effort consisted of two phone calls to Leal by men who spoke and understood no Spanish and there was, concededly, a language barrier. Given Leal's limited understanding of English, these efforts neither constitute the due diligence contemplated by the statute nor appear to be reasonable; rather, the efforts appear to be casual or perfunctory (*cf., McCandless v Vaughn,* 172 F3d 255, 266). Thus, the People's failure to insure Leal's presence after the third mistrial, knowing the critical importance of his presence, and their perfunctory efforts to secure his presence once they had learned that Leal returned to Mexico did not constitute due diligence and, therefore, the defendant's rights of confrontation and due process were violated when Leal's testimony was read into evidence during the fourth trial.

It should be noted that the defendant was convicted of criminal possession of stolen property in the fifth degree after the second trial for which he was sentenced to one year in jail and the ends of justice were served by that conviction. Here, given the fact that the defendant was convicted at the conclusion of the fourth trial, after three mistrials, the victim was not physically present during the fourth trial and the jury could not observe his demeanor, and that the People did not exert due diligence to obtain the victim's presence, the defendant's rights of confrontation and due process were violated, requiring reversal.