**Conway CHRISTIE, Petitioner–Appellant,**

v.

**Melvin HOLLINS, Superintendent, Oneida Correctional Facility, Respondent–Appellee.**

**Docket No. 03–2878.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 16, 2004.

Decided: May 27, 2005.

Jeffrey T. Scott, New York, N.Y. (David Crow, Andrew C. Fine, The Legal Aid Society, New York, N.Y., on the brief), for Petitioner–Appellant.

Eliot Spitzer, N.Y. State Atty. General, New York, N.Y., Michael S. Belohlavek, Deputy Solicitor General, Robin A. Forshaw, Asst. Solicitor General, Laurie M. Israel, Asst. Atty. General, New York, N.Y., submitted a brief for Respondent–Appellee.

Before: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal of the denial of a writ of habeas corpus concerns a claim that a state court's exclusion of the testimony of a defense witness, given at a prior trial, resulted in a conviction obtained in violation of the constitutional right to a fair trial. Conway Christie appeals from the October 14, 2003, judgment of the District Court for the Southern District of New York (Michael B. Mukasey, Chief Judge), denying his petition for a writ of habeas corpus to challenge his state court conviction for criminal possession of a weapon in the third degree. Mindful of the deferential standard for assessing state court rulings when considering habeas corpus relief, we nonetheless conclude that under the especially compelling circumstances of this case, the exclusion of the defense witness's prior testimony was "an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We therefore reverse.

## Background

Christie has been tried twice in state court for offenses arising out of the firing

of a gun that occurred in 1996 at an outdoor rap concert on 125th Street near 7th Avenue in Manhattan. Understanding the nature of Christie's claim and the circumstances that bear on its disposition requires an account of the relevant facts of both of his state court trials.

At the first trial, Christie faced three counts: criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03; criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02[4]; and reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25. The core allegation supporting these charges was that, in or near a crowd of several thousand people attending an outdoor concert, Christie had pointed a gun in the air and fired several shots.

The prosecution presented four witnesses, including three police officers who were present at the scene. Their testimony, detailed below in recounting the evidence at the second trial, sought to establish that Christie had been seen holding the gun and firing it. The defense presented testimony from five witnesses, all friends of Christie's, who had been with him at the concert. They each testified that they had not seen Christie with a gun at any time on the day of the concert. Of the five defense eye-witnesses, four had criminal records, but, pertinent to this appeal, the fifth witness, Violet Smith, did not. Christie denied having a gun or firing one. The prosecutor's summation urged the jury not to believe the four defense witnesses who had criminal records.

The jury acquitted Christie of criminal possession of a weapon in the second degree and reckless endangerment in the first degree. On the count charging criminal possession of a weapon in the third degree, the jury was unable to reach a verdict, and the trial judge declared a mistrial.

At the second trial, Christie faced only the charge of criminal possession of a weapon in the third degree. The prosecution agreed with the defense that the only issue was whether the defendant had the gun. To prove possession, the prosecution presented the same police witnesses from the first trial: Officers Richard Breece and Rodney Vargas and Sergeant Stephen Barrett. All three officers testified that they heard shots while performing crowd-control duties at the concert, but their accounts of the incident were somewhat inconsistent. Officer Breece testified that he heard shots at 7:40 p.m., which caused people at the concert to stampede, many moving to both sides of the barricades that had been set up. After hearing the first shot, Breece, who had been facing the concert stage, turned and saw Christie fire two shots. Breece said Christie was then standing in the street. Sergeant Barrett also testified that he saw Christie fire a gun, but he said that Christie was on the sidewalk and in a "crouched position" and "going down with each shot."

Officer Breece testified that he ran toward Christie, who ran behind a female in the crowd and, after the female fled, Christie threw the gun to the ground just before being tackled by Breece and other officers, including Sergeant Barrett. Sergeant Barrett testified that he was less than five feet away from Christie and that no one was near Christie. Barrett also said that he saw Christie throw the gun to the ground just before being tackled, but he denied that he had tackled Christie. Officer Vargas testified that he saw Officer Breece and Christie rolling around on the ground and, during the scuffle, "this gun came out from in between them." Officer Vargas testified that he picked up the gun and unloaded ammunition from it. Ser-

geant Barrett testified that he was the one who unloaded the gun. Officer Breece testified that after the arrest, Christie made incriminating statements. Sergeant Barrett testified that Christie denied guilt while in police custody.

Christie testified in his own defense. He denied possessing or firing a gun at any time on the day of the concert and also denied making any incriminating statements. Four of his five friends who had testified at the first trial also testified, repeating their accounts of being with Christie at the concert and denying that he had possessed or fired a gun. The prosecution again sought to impeach the four friends' testimony on the basis of their prior criminal records. Notably absent from the second trial, and pertinent to this appeal, was the fifth friend who had testified at the first trial, Violet Smith.

The defense also presented expert testimony from Charles Haase, who for 20 years had investigated crime scenes for the New York City Police Department. Haase was called to refute the testimony of Officer Vargas, who had testified that he had kicked the gun fifteen feet away from himself before picking it up, and that when he picked up the gun, it was warm and smoking. Haase testified that a gun similar to the one alleged to have been held by Christie would smoke for no longer than two seconds after being fired and would not feel warm if touched nearly five to ten seconds after being fired.

After the prosecution rested, defense counsel informed the trial judge that he was unable to locate Violet Smith and sought to introduce her testimony from the first trial. At a hearing outside the jury's presence, counsel elicited from an investigator, Dwayne Matthews, the following details concerning efforts to obtain Smith's presence at the second trial. Because Smith was an entertainer who traveled frequently, Matthews had, prior to the first trial, established a system for locating her to inform her when her testimony would be needed. She had given him the telephone numbers for her mother and her agent, and he had used these numbers to secure her return from California to testify at the first trial.

Matthews remained in contact with Smith after the first trial ended and gave her the expected starting date of the second trial, July 2, 1997. On July 9, five days before Christie's first witness testified, Matthews telephoned Smith's mother, learned that Smith was somewhere in California, and told her mother to have Smith call Matthews regarding the date for her testimony. The next day he went to Smith's house and left his name and number in her mailbox, a technique that had previously resulted in her contacting him. Matthews also tried, without success, to learn her whereabouts from one of her friends. Matthews called Smith's mother on July 12, 13, and 14, and learned that Smith was back in New York City but had not yet come home. Matthews told Smith's mother to tell Smith that she should appear in court on July 15. When Smith did not appear in court on July 15, Matthews called Smith's mother that night and was told that the mother had decided, on her own, not to tell Smith about the trial date because she thought it was too late for Smith to testify. Matthews also left messages for Smith's agent, which were not returned.

Matthews testified that Smith was always cooperative concerning Christie's trial dates and always indicated, when they were in contact, that she would attend and testify. Defense counsel offered to testify concerning the efforts that he and others had made to obtain Smith's presence at the second trial, but the trial court de-

clined to hear further testimony on this subject.

The trial court initially expressed complete satisfaction with the defense efforts to obtain Smith's attendance:

I have no question that everybody that I have had contact with tried desperately to get her to come to court. I have no question about that. I have no question that you have notified her of the court date.

It's clear to me that you have done everything to bring this woman into court.

. . .

I accept [the investigator's] testimony. I believe that is correct. I believe you have been trying for two weeks to get her to come to court and she has not come.

. . .

You have been diligent in getting your witnesses here. It's clear to me that you made an effort to find this witness.

Nevertheless, without receiving any contrary evidence from the prosecution, the trial court later switched its position, expressed the view that Matthews' efforts were not "sufficient," and stated, "I can only assume, for whatever reason, she doesn't want to come." The judge also expressed the belief that Smith's mother had told Smith that the defense was trying to locate her. The judge said he was not "going to delay this trial any further," and denied defense counsel's motion to admit Smith's prior testimony into evidence.

The prosecutor's summation, mirroring what he had said at the first trial, argued strenuously that Christie and his eye-witness friends were not to be believed because they all had criminal records.

The jury convicted Christie of criminal possession of a weapon in the third degree. The trial court imposed the maximum sev-en-year indeterminate sentence for a predicate felon.

The Appellate Division affirmed in a five-sentence order, stating that Christie had "failed to meet his burden of establishing that [Smith] could not 'with due diligence be brought before the court,'" *People v. Christie*, 278 A.D.2d 37, 38, 717 N.Y.S.2d 523, 523 (1st Dep't 2000) (quoting N.Y.Crim. Proc. Law § 670.10[1]), and that "there was no reasonable possibility that [Smith's] testimony would have affected the verdict," *id.* Leave to appeal to the Court of Appeals was denied. *People v. Christie*, 96 N.Y.2d 798, 726 N.Y.S.2d 376, 750 N.E.2d 78 (2001) (table).

Christie then filed a petition for federal habeas corpus, which the District Court denied. *Christie v. Hollins*, No. 01 Civ 11605, 2003 WL 22299216, at *1 (S.D.N.Y. Oct.7, 2003). Although agreeing with the Magistrate Judge that the questions raised by the petition "can be considered 'close' ones," *id.* at *6, Chief Judge Mukasey ruled that it was not unreasonable for the state courts to conclude that Smith was not unavailable and that her testimony from the prior trial would not have affected the verdict. The District Court issued a certificate of appealability.

## Discussion

The Antiterrorism and Effective Death Penalty Act "(AEDPA")" permits the granting of habeas corpus relief with respect to a state court conviction if the state court's rejection of a petitioner's claim is either "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). We agree with the District Court that the issue in this case is whether the state courts made an unreasonable application of law established by the Supreme Court.

Although the meaning of "unreasonable" in the context of the AEDPA standard is "difficult to define," *Williams v. Taylor,* 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court has made it clear that the standard requires that the state court decision must have been "more than incorrect or erroneous." *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *see Price v. Vincent,* 538 U.S. 634, 641, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (same). We have recognized that the AEDPA standard requires "[s]ome increment of incorrectness beyond error." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000).

■ The basic principles of constitutional law pertinent to this case are not in dispute. A defendant has a right to present witnesses in his defense, *see Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and the prior recorded and cross-examined testimony of a witness is admissible if the witness is unavailable despite "good faith efforts" to secure the witness's attendance, *see Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In assessing whether the exclusion of Violet Smith's testimony denied Christie a fair trial, we must consider the adequacy of the defense efforts to locate her and the likely significance of her testimony.

■ *Defense diligence.* The defense sought to obtain Smith's presence at the second trial by using the same technique that had been successful for the first trial. Aware that Smith was an entertainer who traveled frequently but kept in contact with her mother, the defense alerted the mother when Smith would be needed to testify and left messages at Smith's home. The defense investigator repeatedly contacted Smith's mother. The defense also tried without success to contact Smith's agent and locate Smith through a friend of hers. As it turned out, the defense efforts were defeated, not by lack of defense diligence nor by reluctance on Smith's part, but by her mother's wrong assumption, when Smith contacted her, that it was too late for Smith to testify.

The defense efforts to obtain Smith's presence compare favorably with the prosecution's efforts in *Roberts,* which the Supreme Court considered sufficient to justify introducing the prior testimony of an absent prosecution witness. In the pending case, the State contends that the defense failure to issue a subpoena for Smith undermines the claim of diligence. However, nothing in the record supports a belief that Smith could have been located to effect service of a subpoena, or that, had she learned of the trial date, a subpoena would have been necessary to secure her attendance. We note that the New York Court of Appeals has not regarded a subpoena as essential to diligent efforts to secure the presence of a cooperative witness. *See People v. Arroyo,* 54 N.Y.2d 567, 572–74, 446 N.Y.S.2d 910, 914–15, 431 N.E.2d 271 (1982). The initial assessment of the trial judge succinctly summed up the situation: "It's clear to me that you have done everything to bring this woman into court."

■ *Affecting the outcome.* The evidence of Christie's possession of a gun was in sharp dispute at both trials. The police testimony supporting his possession was marked by serious inconsistencies among the accounts of the police officers. The defense testimony was entirely consistent in asserting that Christie did not possess a weapon. Smith was the only defense witness who could not be impeached on the basis of prior convictions. The jury that heard her testimony at the first trial acquitted Christie of the two most serious

offenses and could not reach a verdict on the remaining count of Criminal Possession of a Weapon in the Third Degree. The jury that considered virtually the same evidence presented at the first trial with the crucial exception of Smith's testimony found Christie guilty. The two trials present the equivalent of a controlled experiment that demonstrates the critical nature of Smith's testimony to Christie's defense.

■ *Application of the AEDPA standard of unreasonableness.* We have no doubt that the state court's exclusion of Smith's testimony was an erroneous denial of Christie's constitutional right to present a defense. The state court trial judge had concluded that it was "clear" that the defense had "done everything to bring this woman into court." The judge's subsequent change of mind was not based on any new evidence, and in fact rested on two conclusions unsupported by the evidence. First, the judge expressed the view that Smith's mother had told Smith that the defense was trying to locate her, whereas the testimony of the investigator reported that the mother had decided not to tell Smith of the trial date because the mother thought, incorrectly as it happened, that it was already too late. Second, the judge expressed the further view that Smith was reluctant to appear, a conclusion totally unsupported by the evidence. The state court's rejection of the materiality of Smith's testimony is conclusively refuted by the records of the two trials, with the salient difference in outcomes with and without her testimony.

The search for the "increment of error" that renders a state court's rejection of a constitutional claim unreasonable and hence remediable via habeas corpus is an elusive task. Appellate courts do not customarily assess degrees of error. Nevertheless, we are obliged to consider whether the denial of Christie's constitutional right to present a defense was not only error, but an unreasonable commission of error of the sort for which habeas corpus relief, on rare occasion, is available. In this case, the state court trial judge, after ruling that the defense had been diligent in attempting to secure the witness's attendance, changed his mind without new evidence and on the basis of two incorrect assumptions, neither of which was supported by the evidence. The materiality of Smith's testimony, in the extraordinary circumstances of the two trials with and without her critical testimony, cannot seriously or reasonably be denied.

Without in any way doubting the conscientiousness of the state courts that have sustained Christie's conviction and with due regard to the careful consideration given by the District Court, we are fully persuaded that this case presents that unusual instance where the valuable constitutional right to present a defense was not only erroneously denied, but denied through an unreasonable application of pertinent law as enunciated by the Supreme Court.

## Conclusion

Accordingly, the judgment of the District Court is reversed, and the case remanded for fashioning an appropriate remedy.