# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 19
The People &c.,
      Respondent,
    v.
Carlos Tapia,
      Appellant.

Daniel A. Rubens, for appellant.
James J. Wen, for respondent.

DiFIORE, Chief Judge:

The issue presented in this appeal is whether a portion of a testifying witness's prior grand jury testimony was properly admitted as a past recollection recorded to supplement his trial testimony. We hold that the trial court did not abuse its discretion in admitting the

grand jury testimony as a past recollection recorded as there was a proper foundation for receipt of the evidence.  We further hold that, since the declarant of that out-of-court statement was a live witness at trial, defendant's Sixth Amendment right to confrontation was not violated.

I.

At trial, Sergeant Charlie Bello[1] testified that, on November 2, 2008, he was driving Lieutenant James Cosgrove back to the police precinct at about 3:30 a.m. when he saw defendant "body slam" the victim in the street outside a bar and drag him between two parked cars.  The officers exited their vehicle and, while Cosgrove pulled defendant off the victim, Bello stopped another man who was running toward the altercation.  Bello testified that, after Cosgrove separated the victim from defendant, he noticed the victim was "bleeding profusely from his face and neck."  Defendant and the other man were arrested.[2]  Bello observed a shattered beer bottle on the ground where the victim had been assaulted, but did not collect the pieces of glass as evidence.

The victim sustained multiple injuries consistent with being cut by a dangerous instrument.  He testified at trial that he was attacked from behind – punched and kicked – and only realized he was bleeding just before the police intervened.  The victim identified defendant as one of his assailants.  The physician who treated the victim at the emergency

---

[1] Bello was a police officer at the time of the offense but had been promoted to the rank of sergeant at the time of trial.

[2] The second individual was not indicted in connection with the assault.

room testified that the five lacerations to the victim's face and neck were "consistent with being struck with a sharp cutting instrument," such as a piece of glass. The physician explained that the victim's neck lacerations were "potentially life threatening" because of their proximity to the carotid artery and the vena cava.

During the People's case, defense counsel timely notified the court and the People that she would be seeking a missing witness charge if Lieutenant Cosgrove was not called as a witness. In response, the People produced Cosgrove, who had retired from the police department. Because Cosgrove could not independently recall the incident, the People, outside the ken of the jury, sought to have his prior grand jury testimony admitted as a past recollection recorded. Defense counsel objected, asserting that Cosgrove could not be cross-examined due to his claimed lack of memory and that admitting the grand jury testimony would therefore violate defendant's Sixth Amendment right to confrontation. Counsel also contended that the grand jury testimony was inadmissible under CPL 670.10, which governs the use of prior testimony of a "witness . . . unable to attend" trial. The People indicated that, although the witness was available, if the missing witness charge was denied, Cosgrove would not take the stand. Defense counsel declined to withdraw her request for a missing witness charge, inconsistently asserting that Cosgrove was available for purposes of the latter charge but, due to his memory loss, was unavailable for confrontation purposes. The court found that the witness was available for confrontation as "[h]e is literally subject to cross-examination by being on the witness stand under oath and passed to [the defendant] as a witness for cross[-]examination." The trial court held

that, if the People established the appropriate evidentiary foundation, the prior grand jury testimony would be admissible as a past recollection recorded, because Cosgrove was in attendance and subject to cross-examination.

The People called Cosgrove to the stand, who testified that on November 2, 2008 he had been working an 11:00 p.m. to 7:45 a.m. shift, in uniform, with his partner, Officer Bello. Based on his review of police paperwork, Cosgrove was also able to testify that he assisted in arresting two individuals at the scene, but could not independently recall the circumstances leading to defendant's arrest. The People then sought to introduce Cosgrove's grand jury testimony as a past recollection recorded. Cosgrove testified that he appeared before the grand jury just days after the offense, that the event was fresh in his mind at that time, that he testified truthfully and accurately before the grand jury and that his review of the stenographic transcript of his prior testimony did not refresh his present recollection of the events. Finding the appropriate evidentiary foundation established, the court allowed a portion of Cosgrove's testimony to be read into the record.

Cosgrove's grand jury testimony, which was consistent with Bello's trial testimony, was brief and not particularly detailed. The testimony added the fact that Cosgrove saw defendant kick the victim in the head. The court immediately gave the jury the limiting instruction that "a memorandum of a past recollection is not of itself independent evidence of the facts contained therein. It is auxiliary to the testimony of the witness."

On cross-examination, defense counsel questioned Cosgrove about several routine matters including his partnership with Officer Bello and the circumstances surrounding his

grand jury testimony.  Cosgrove testified that he had been to the area of the assault, which was located close to the police precinct, on various occasions "to intervene in bar fights." Cosgrove readily admitted that he did not recall the details of those particular altercations, explaining that he "did midnights for most of [his] career and a fight outside of a bar [did not] really stick out in [his] mind [because he] responded to a lot of them."  Defense counsel focused on the witness's lack of present recollection but also elicited that Cosgrove's grand jury testimony that he had been a passenger in a "parked police department vehicle" was probably supposed to read "marked" police vehicle.  In addition, Cosgrove admitted that he did not review a copy of the grand jury minutes other than in preparation for trial and that, based on his lack of independent recollection, he could not swear that the official court reporter's transcription of his testimony – although certified – was accurate.

The following day, after the close of evidence, defendant moved to strike Cosgrove's grand jury testimony, asserting that the officer's inability to independently verify the accuracy of the stenographer's transcription removed the foundation for its admissibility as a past recollection recorded.  In response to the People's argument that the motion was untimely, the court initially observed that it could still give a curative instruction but, ultimately held that defendant's argument was "untimely and thereby is waived."  The court went on to reject the argument on the merits.

Three counts of the indictment were submitted in the alternative to the jury under a theory of acting in concert – assault in the first degree, attempted assault in the first degree and assault in the second degree.  In its final charge, the court expounded upon how the

jury should consider Cosgrove's grand jury testimony as a past recollection recorded. In addition to a second instruction that the evidence of past recollection recorded was auxiliary to the witness's trial testimony and not independent evidence of the facts, the jury was further instructed that

> "you may consider the witness had knowledge at the time the testimony was taken of the events he testified to and whether he saw the reported testimony at or near the time the testimony was taken and recognized it at the time as containing a true statement of facts within his own knowledge. You may consider the witness's testimony on this issue in deciding what weight to give the statements contained in the former testimony. You are at liberty to accept as much as you think accurate and disregard the rest or accept or disregard it in its entirety."

The jury acquitted defendant of assault in the first degree, but convicted him of attempted assault in the first degree.

The Appellate Division affirmed, holding that it was a proper exercise of discretion for the trial court to admit Lieutenant Cosgrove's grand jury testimony as a past recollection recorded (151 AD3d 437, 439 [1st Dept 2017]). The Court held that the People laid a proper foundation for the admission of the testimony and that there was no violation of the Confrontation Clause because Cosgrove testified at trial and was subject to cross-examination. The Court also held that the evidence was legally sufficient to support the conviction. Two Justices dissented in part and would have reduced defendant's conviction to attempted second degree assault, on the ground that the evidence was not legally sufficient because it did not establish beyond a reasonable doubt that defendant, alone or

acting in concert, cut the victim with a dangerous instrument.  One of the dissenting Justices granted defendant leave to appeal and we now affirm.[3]

## II.

At trial, when a witness testifies in the presence of defendant and before the trier of fact, the evidentiary doctrine of past recollection recorded allows "a memorandum made of a fact known or an event observed in the past of which the witness lacks sufficient present recollection [to] be received in evidence as a supplement to the witness's oral testimony" (People v Taylor, 80 NY2d 1, 8 [1992]).  The foundational requirements for the admissibility of a past recollection recorded are: 1) the witness must have observed the matter recorded; 2) the recollection must have been fairly fresh at the time when it was recorded; 3) the witness must currently be able to testify that the record is a correct representation of his or her knowledge and recollection at the time it was made; and 4) the witness must lack sufficient present recollection of the information recorded (see 80 NY2d at 8).  "When such a memorandum is admitted, it is not independent evidence of the facts contained therein, but is supplementary to the testimony of the witness.  The witness' testimony and the writing's contents are to be taken together and treated in combination as if the witness had testified to the contents of the writing based on present knowledge" (80 NY2d at 9).  The admissibility of such evidence is committed to the sound discretion of

---

[3] This Court previously denied the People's motion to dismiss the appeal based on defendant's deportation (32 NY3d 1017 [2018]).

the trial court in determining whether the appropriate foundational requirements have been met (see 80 NY2d at 9).

Here, the court did not abuse its discretion in finding that the foundational requirements were met and that Cosgrove's grand jury testimony was admissible as a past recollection recorded. On direct examination, Cosgrove stated that he had previously testified truthfully and accurately before the grand jury to an event he had observed when that event was still fresh in his mind, and that reading the official minutes of the prior testimony did not refresh his present recollection. The correct representation of the record was provided by the court stenographer's certification of the grand jury testimony. Defendant's argument that there was an improper foundation is based on an alleged typographical error in the minutes and Cosgrove's testimony that he did not review the transcript of his grand jury testimony near the time it was recorded to verify its accuracy. This argument is without merit. Determinatively, the transcript of the grand jury minutes was certified by the court reporter as a true and accurate record of the testimony (see 80 NY2d at 10-11). The trial court reasonably concluded that the officer's representation that his testimony was truthful and accurate when made, together with the official court stenographer's certification, were sufficient – particularly here, where the discrepancy identified was a trivial typographical error that defendant fully explored on cross-examination (see generally People v Bethune, 29 NY3d 539, 543 [2017]).

III.

Notwithstanding the core fact that Cosgrove was a testifying witness at the trial and thus not an unavailable witness, defendant and the dissent maintain that the use of Cosgrove's grand jury testimony as a past recollection recorded violated CPL 670.10 and the Confrontation Clause. These arguments disregard the plain text of CPL 670.10 – particularly the phrase "unable to attend" – as well as the significance of defendant's cross-examination of a live, testifying witness before the trier of fact, and are without merit.

CPL 670.10 sets forth three specific types of former testimony to be admitted into evidence when the declarant is subsequently proven "unable to attend" trial for certain reasons. The admissible categories of prior testimony adhere to the constitutional right to confrontation by providing the defendant with the opportunity to cross-examine the declarant: testimony that was given at a trial on the accusatory instrument, at a preliminary hearing on the felony complaint, or at a conditional examination under CPL article 660 (see CPL 670.10 [1]). The declarant is unavailable at trial within the meaning of the statute when "the witness is *unable to attend* . . . by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court" (CPL 670.10 [1] [emphasis added]). CPL 670.20 (1) sets forth the procedure for moving the prior testimony of an absent declarant into evidence and requires the trial court to "conduct a hearing to determine whether personal attendance of the witness is" "precluded by some factor specified in [CPL 670.10 (1)]." As we have held, CPL 670.10 "reflecting the spirit of the underlying constitutional

prescriptions, demands a showing that the witness 'cannot without due diligence be found'" (People v Arroyo, 54 NY2d 567, 571 [1982]). The unavailability of the witness under 670.10 must "be established to satisfy the court that the prosecutor's failure to produce [the witness] was not due to . . . a strategic preference for presenting [the] testimony in the more sheltered form of . . . minutes rather than in the confrontational setting of a personal appearance on the stand" (54 NY2d at 571).

The statute's "three carefully worded and enumerated exceptions" to the use of prior testimony of an unavailable declarant are essentially exclusive (People v Ayala, 75 NY2d 422, 429 [1990] [internal quotation marks and citation omitted]), but we have recognized certain "exceptions" predicated on either the forfeiture or inapplicability of the defendant's right to confrontation of the declarant. In the case of a defendant's forfeiture of the right to confrontation, a witness's grand jury testimony may be admissible "as direct evidence where the witness is unavailable to testify at trial and the proof establishes that the witness's unavailability was procured by misconduct on the part of the defendant" (People v Geraci, 85 NY2d 359, 366 [1995]). In the case where the right to confrontation is not a factor because the defendant is the proponent of the evidence, a defendant's due process right to present witnesses in his own defense required that he be permitted to use grand jury testimony from an unavailable witness (see People v Robinson, 89 NY2d 648, 654 [1997]).

In the absence of defendant's forfeiture of the right of confrontation, there is no real dispute that CPL 670.10 does not allow the People's use of grand jury testimony of an *unavailable* witness, as defined therein, for the simple reason that there was no cross-

examination in the prior proceeding. In this regard, defendant's and the dissent's reliance on People v Green (78 NY2d 1029 [1991]) for the proposition that CPL 670.10 is essentially a categorical exclusion of grand jury testimony of a live witness at trial is mistaken. In Green, we held that it was error to allow the People to admit a nontestifying witness's prior grand jury testimony at trial as evidence-in-chief because that testimony "did not fall within the classes of prior testimony rendered admissible in criminal proceedings by CPL 670.10" (78 NY2d at 1030).

In that murder case, after jury selection had begun, the prosecutor informed the court that the 11-year-old witness "was indicating an unwillingness to testify and that his critical testimony would not be forthcoming at the trial" (see Appellant's Appendix at 11 in People v Green, 78 NY2d 1029 [1991]). After interviewing the child in the robing room and confirming that the child professed to have no recollection of the incident or of testifying at the grand jury, the court issued a written decision, ruling that the child's grand jury testimony would nonetheless be admissible at trial. The People, who were unable to demonstrate that the defendant had played any part in causing the witness's reticence, opted not to proceed to a Sirois hearing (see Matter of Holtzman v Hellenbrand, 92 AD2d 405 [2d Dept 1983]; People v Smart, 23 NY3d 213 [2014]).[4] During the trial, the witness was

---

[4] Review of the briefs and appellate record filed with this Court on the appeal in Green, demonstrates that the People sought to introduce the grand jury testimony by arguing that, despite the lack of proof that Green had induced the witness to refuse to testify, it would not be "too far of a stretch of the imagination to blame the defendant[]" for the witness's refusal to testify, based, in part, on the "climate of fear" in the neighborhood (see Appellant's Appendix at 53 in People v Green, 78 NY2d 1029 [1991]). This argument in Green, which predates Geraci and its progeny, fails to measure up to the standard of proof

again examined in the robing room – not before the trier of fact – and reiterated that he had no recollection of the incident, of ever having testified before the grand jury, or even of his prior robing room conversation with the court. The child was not sworn and refused to respond to the court's attempt to establish his testimonial capacity (see CPL 60.20). The court adhered to its prior decision, allowing the grand jury testimony into evidence as an exception to the hearsay rule. Defense counsel was then permitted to inquire of the witness as to whether he recalled speaking with defense investigators, which the child denied. The witness was never called to the stand by either party, even to explain the extent of his lack of recollection, despite the witness's physical availability to testify before the fact-finder.[5]

_____

required before a defendant is deemed to forfeit his right to confront a witness that he or she rendered unavailable. The trial court in Green ultimately determined that the nontestifying witness's grand jury testimony could be admitted, not under any then-existing statute or hearsay exception, but under a provision of the Proposed Code of Evidence which would have authorized a residual exception to the hearsay rule for evidence containing substantial guarantees of trustworthiness and significant probative value (see id. at 80-84). The defendant's adamant position was that the child witness, proclaiming no recall of any facts relating to the crime or his own testimony before the grand jury, could not be presented before the jury without prejudice to the defendant's case. Nonetheless, the court deemed the defendant's ability to compel the witness to testify for cross-examination purposes somehow sufficient to excuse the hearsay nature of the testimony while protecting the defendant's right to confrontation (see id. at 14, 80). Any suggestion that the defendant's right to confrontation is satisfied by placing the onus on defendant to call to the stand an available witness after the People elected not to call that witness and instead used the nontestifying declarant's hearsay in their case-in-chief is wholly without merit. Needless to say, based on all of the above factors, Green is completely inapposite to the present case.

[5] The dissent's extraordinary assertion that the unsworn child witness in Green "attended and testified at trial" (dissenting op. at 13) is completely at odds with the positions of the parties in that case as well as the trial court's own jury instructions ("[the child witness] as you obviously are aware was not here. Did not testify from the witness stand"] see Appellant's Appendix at 106 in People v Green, 78 NY2d 1029 [1991]). There is no support for the contention that the inquiry of the child in the robing room is the functional

Nonetheless, the People were erroneously permitted to introduce the nontestifying witness's prior grand jury testimony as evidence-in-chief, despite the failure to lay any foundation that the out-of-court statement was admissible either under CPL 670.10 or as a past recollection recorded.

In stark contrast, here Cosgrove took the stand before the trier of fact, without objection by defendant, as a People's witness and was cross-examined by defendant. Those factors are not "immaterial" and indeed render the very purpose of CPL 670.10 inapplicable to this case. To be sure, the People did not seek to introduce the testifying witness's grand jury testimony under that statute. Rather, as noted above and unlike the circumstances presented in Green, the People laid an adequate foundation for admission of the testimony as a past recollection recorded via Cosgrove's live testimony that he appeared before the grand jury just days after the offense, that the event was fresh in his mind at that time, that he testified truthfully and accurately before the grand jury, and that his review of his grand jury testimony did not refresh his present recollection.[6]

---

equivalent of testimony given in open court before the jury (see CPL 65.20) and indeed, the inquiry simply elicited additional hearsay statements outside the ambit of CPL 670.10. Moreover, the Green defendant's use of the nontestifying declarant's prior statements, including his denials in the robing room, to impeach the prior grand jury testimony does not transform the declarant into a testifying witness.

[6] The dissent's dire warning that we are permitting "the wholesale introduction of prior testimony not subjected to cross-examination" disregards both the foundational requirements of a past recollection recorded and its limited evidentiary value. Again, as we held in Taylor, the past recollection recorded is not independent evidence of the facts, but is merely supplementary to the witness's trial testimony. The dissent further ignores that the jury is the arbiter of the testifying witness's credibility and will take memory loss into account in its calculus of the weight that should be accorded to that witness's

Equally unavailing is defendant's Sixth Amendment argument that, even though

Cosgrove testified at trial, his memory failure rendered him unavailable for the purpose of

cross-examination within the meaning of the Sixth Amendment. Significantly, the right to

confrontation guarantees not only the right to cross-examine all witnesses, but also the

ability to literally confront the witness who is providing testimony against the accused in a

face-to-face encounter before the trier of fact (see Coy v Iowa, 487 US 1012, 1016-1020

[1988]; California v Green, 399 US 149, 157-158 [1970]). The Confrontation Clause is

satisfied when these requirements are fulfilled – even if the witness's memory is faulty.

The United States Supreme Court has directly addressed the situation where a witness was

unable to explain the basis for a prior out-of-court identification due to memory loss (see

United States v Owens, 484 US 554 [1988]; see also CPL 60.25). In Owens, the Court

held that "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever

extent, the defense might wish" (484 US at 559 [quotation marks and citations omitted]).[7]

To that end, "[i]t is sufficient that the defendant has the opportunity to bring out such

---

testimony. Combining these factors, there is no incentive whatsoever for a witness who
has an independent recollection of the facts to feign memory loss in favor of such prior
testimony. Finally, the dissent overlooks various other evidentiary rules imposing
limitations on the use of prior testimony of available witnesses (see e.g. People v McClean,
69 NY2d 426 [1987] [prior consistent statements generally inadmissible unless proffered
to rebut a claim of recent fabrication]).

[7] Prior grand jury testimony has been held admissible as a past recollection recorded under
Fed R Evid 803 (5) where the witness is present at trial and the defendant has the
opportunity for cross-examination (see Isler v United States, 824 A2d 957, 961 [DC Cir
2003]).

matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination), . . . the very fact that he has a bad memory" (484 US at 559; see also Delaware v Fensterer, 474 US 15, 19 [1985] ["an expert witness who cannot recall the basis for his opinion invites the jury to find that his opinion is as unreliable as his memory"]).  "[T]he Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination" (Crawford v Washington, (541 US 36, 61 [2004]).  Although Crawford changed the landscape of the analysis of what constitutes "testimonial evidence" within the meaning of the Confrontation Clause, the Supreme Court clearly maintained the fundamental importance of a witness's presence at trial.  "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it" (541 US 59 n 9).  Therefore, Cosgrove's presence at trial as a testifying witness, where he was subjected to cross-examination before the trier of fact who must assess the credence and weight to be accorded to his testimony as a whole, precludes defendant's Confrontation Clause argument.[8]

---

[8] We note that defendant did not raise, and we therefore do not address, whether admission of Cosgrove's grand jury testimony violated his right to confrontation under the New York State Constitution.

IV.

Finally, the evidence was legally sufficient to support the conviction.  "[V]iewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]).

Accordingly, the order of the Appellate Division should be affirmed.

People v Carlos Tapia

No. 19

WILSON, J. (dissenting):

Chief Justice John Marshall presided over the 1807 trial of Aaron Burr. Prosecutors attempted to admit the out-of-court statement of one of Burr's alleged co-conspirators, Herman Blennerhassett. The Chief Justice ruled the out-of-court statement inadmissible because of the importance of cross examination:

"The rule of evidence which rejects mere hearsay testimony, which excludes from trials of a criminal or civil nature the declarations of any other individual than of him against whom the proceedings are instituted, has been generally deemed all essential to the correct administration of justice. I know not why a declaration in court should be unavailing, unless made upon oath, if a declaration out of court was to criminate others than him who made it; nor why a man should have a constitutional claim to be confronted with the witnesses against him, if mere verbal declarations, made in his absence, may be evidence against him. I know of no principle in the preservation of which all are more concerned. I know none, by undermining which, life, liberty and property, might be more endangered. It is therefore incumbent on courts to be watchful of every inroad on a principle so truly important."

(United States v Burr, 25 F. Cas. 187, 193).  More succinctly, testimony is generally inadmissible unless both the witness and opposing counsel were in the room where it happened.

Here, Mr. Tapia's conviction rested in part on the admission of the grand jury testimony of Lieutenant Cosgrove.  That testimony was not subjected to cross examination when taken, and by the time of trial, Lieutenant Cosgrove testified that he remembered nothing about the incident for which Mr. Tapia stood trial.  The admission of his grand jury testimony, under those circumstances, violated CPL 670.10 and our decision in People v Green (78 NY2d 1029 [1991]).

I.

At around 3:30 a.m. on November 2, 2008, Sergeant Charlie Bello was driving south on Jerome Avenue in an unmarked vehicle, with Lieutenant James Cosgrove as his passenger. The two police officers were headed to the 44th Precinct station house to process

an arrest.  A block south of the precinct sat a local bar, La Rubia.  Driving past La Rubia, Sergeant Bello saw Carlos Tapia body slam a person in front of some parked vehicles.

The officers stopped and rushed on foot toward the fight.  Sergeant Bello testified that he saw Mr. Tapia drag the man's body behind two cars and lost sight of them. Lieutenant Cosgrove came upon Tapia kicking his victim and pulled him off; Mr. Tapia was standing over his bloodied victim, who bore a slash on his face. Sergeant Bello saw another individual running toward the fight, whom he and Cosgrove believed to be a second assailant. The victim said he had been attacked by two people, but he was disoriented during the melee and could not say who had cut him or when it happened.  Sergeant Bello canvassed the area and saw pieces of a broken beer bottle near the spot Mr. Tapia had been on top of his victim, but did not check them for fingerprints or to see if there was blood on them. He did not find any razors, knives, or other weapons, either at the scene or in the possession of Mr. Tapia or the other presumed assailant.

Both officers testified before the grand jury. At trial, four years later, Lieutenant Cosgrove testified that he no longer had any independent recollection of this arrest, and that reviewing his grand jury testimony had not refreshed his recollection at all.

Sergeant Bello testified live and in detail about the event.  The People moved to introduce Lieutenant Cosgrove's grand jury testimony. Over defense counsel's objection, the court allowed the People to read Lieutenant Cosgrove's grand jury testimony that related to the events in question.

II.

As regards this appeal, the Confrontation Clause is neither the starting nor ending place.  It is not the starting place because even before its enactment, the common law forbade criminal prosecution by way of out-of-court statements, even if they were sworn (see generally Crawford v Washington, 541 US 36 [2004]).  It is not the ending place because the Legislature's enactment of Criminal Law 670.10 resolves this case as a matter of statute, without resort to the Constitution.[1]

Criminal Procedure Law 670.10 allows for three types of prior testimony to be admissible in a criminal prosecution: "testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to section 180.60, or (c) an examination of such witness conditionally, conducted pursuant to article six hundred sixty."  Prior grand jury testimony is not among those.  Crucially, each of the three varieties of prior testimony that may be admitted are types of testimony as to which, when the testimony was originally taken, the right of cross-examination was assured (see NY CLS Const Art I, § 6; CPL § 180.60 [4][8]; CPL § 660.60 [1]).  The majority acknowledges that the common feature of the allowable types of prior testimony is that the testimony was previously subjected to cross-examination (majority op at 9).

Of course, grand jury testimony is never subjected to cross-examination.  Moreover, even as to the three categories of prior testimony that may be admitted at a criminal trial,

---

[1] Defendant failed to preserve for appellate review any claim based on the Confrontation Clause of the State Constitution.

the Legislature insisted that such testimony could not be admitted unless "the witness is unable to attend," which must be proven by "evidence demonstrating that personal attendance of such witness is precluded" (CPL 670.10, 670.20). The Legislature's decision to exclude prior testimony unless both (1) it was subject to cross-examination when originally taken, and (2) the witness cannot be produced at trial, could not be clearer.

Our decision in People v Green, which applied CPL 670.10 to bar the admission of a witness's prior grand jury testimony, controls the disposition of this case, and requires the conclusion that the admission of Lieutenant Cosgrove's grand jury testimony violated CPL 670.10, requiring reversal. Green's holding, unanimous on this point, is as follows:

> "The grand jury testimony of an eyewitness to the crime, which identified defendant as one of the perpetrators, did not fall within the classes of prior testimony rendered admissible in criminal proceedings by CPL 670.10. Inasmuch as the statute's 'three carefully worded and enumerated exceptions' are exclusive (People v Harding, 37 NY2d 130, 134; see, People v Ayala, 75 NY2d 422, 429), the trial court erred in allowing the witness' prior testimony to be admitted as evidence-in-chief against the defendant" (78 NY2d at 1030).

The facts of Green are not stated in our memorandum decision, but appear in the papers then before us. A child ("J.H.") witnessed a shooting and testified at length before the grand jury that he saw Mr. Green and another man ("7up") shoot the victim and flee. In his grand jury testimony, J.H. described the color of the gun that each man used and the direction they fled and stated that he saw the victim bleeding on the ground. He also testified that Mr. Green was someone he saw every day in the neighborhood and knew well. A year later, before a second grand jury, he testified the same way as before. When, two years after the shooting, trial commenced, J.H. said he had no recollection of the

events.  Faced with that total memory loss and a request by the People to read J.H.'s grand

jury testimony into the record, Supreme Court, in its order of January 31, 1989, directed as

follows:

> I have concluded that the appropriate procedure is to produce the witness at trial, that if when he is called he adheres to his earlier position, that the Grand Jury minutes of [J.H.] be read to the jury, that thereafter [he] be made available for cross-examination so that the defendants' right of confrontation and their right to impeach his testimony is available.

During trial, but out of the presence of the jury, J.H. was examined first by counsel

for the People and then by counsel for Mr. Green.  Thereafter, both the examination by the

People and the examination by Mr. Green's counsel, together with both instances of J.H.'s

grand jury testimony, were read into the record with the jury present.

No meaningful distinction exists between Green and this case.  In Green, J.H. was

physically present, just as Lieutenant Cosgrove was present at this trial. Indeed, the

"written decision" cited by the majority (majority op at 11) directed that "the grand jury

minutes of [J.H.] will be read to the jury, [and] that after [J.H.] will be made available for

cross-examination" (A80). In Green, J.H. was examined and cross-examined at trial, just

as Lieutenant Cosgrove was; the only, immaterial, difference being that in view of J.H's

young age, the Court took his testimony in camera, and had it read to the jury.  Just as here,

when the witness repeatedly denied any recollection of the events he had observed, the

court admitted his grand jury testimony.  We held that the admission of that testimony

violated CPL 670.10 and required a new trial.

To admit prior testimony, CPL 670.10 requires that a witness be "unable to attend" specifically limited to circumstances "by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot be brought before the court." Neither the witness in Green nor Lieutenant Cosgrove was unable to attend. Both attended trial, and the testimony of both, including testimony as to their inability to recall, was presented to the jury. In Green, we applied 670.10 and reversed. Any different decision here relies on distinctions that do not constitute a meaningful difference.

The majority's several attempts to distinguish Green are wholly unpersuasive. First, the majority repeatedly claims that Green is distinguishable because J.H. was a "nontestifying" witness who was "never called to the stand by either party, even to explain the extent of his lack of recollection" (majority op at 10-12). As set forth above, that is untrue. The entirety of J.H.'s in camera examination and cross-examination, in which he testified as to his total lack of recollection of the events two years prior, was read to the jury in open court as part of the trial evidence, immediately after his grand jury testimony was read into the record.

Labelling those facts "extraordinary" (majority op at 12 n 5) does not alter them. The majority acknowledges that both the People and the defense examined J.H. in chambers, and that the in camera examination was read to the jury, along with J.H.'s grand jury testimony. The majority does not dispute that the in camera examination was directed at J.H's lack of memory. Although the majority properly notes that the trial court's

instructions reminded the jurors that J.H. "was not here. Did not testify from the witness stand," the court continued that even so, "[y]ou may consider that testimony the same as though [J.H.] appeared in court and testified from the witness stand" (A106). The majority, however, omits the following. After concluding the bulk of the jury charge, the court met with counsel to determine whether any further instructions or exceptions were requested by counsel. Defense counsel requested that the court further instruct the jury that the jurors could consider the in camera testimony of J.H. "in determining the credibility of [J.H.'s] grand jury testimony." (A127). The court then instructed the jury as follows:

> "I did not during my instructions, I indicated that [J.H.'s] Grand Jury testimony can be considered by you as evidence, there was a, in addition to his Grand Jury testimony, questions that were asked of him by Mr. Dubin [defense counsel] *and they are in evidence as well and you may consider those on the issue of [J.H.'s] credibility*" (A128; emphasis added).

The "contention that the inquiry of the child in the robing room is the functional equivalent of testimony given in open court before the jury" (majority op at 12-13 n 5) is not a contention at all. The plain fact from the record in Green is that the trial court instructed the jury that J.H's in camera examination was "in evidence" just as was his grand jury testimony, with no distinction made between them as to evidentiary value. It was clear to the Appellate Division, too, that "the in camera transcripts also were admitted" (People v Green, 159 AD2d 432, 433 [1st Dept 1990]). The majority's elaborate explanations of what should or could have happened are, quite simply, not what happened.

Both J.H and Lieutenant Cosgrove were testifying witnesses whose contemporary testimony about their lack of recollection was trial evidence. Thus, the majority's claim of

a "stark contrast" between the facts of <u>Green</u> and those present here is wholly unfounded. I do agree with the majority, though, that I should not have used the word "immaterial" to describe the difference between Lieutenant Cosgrove's live testimony about his lack of memory and J.H.'s like testimony read into the record (majority op at 12). I should instead have said "nonexistent," because the trial court expressly instructed the jury that J.H.'s testimony, including the testimony taken in camera and read into the record, was in evidence and could be considered in evaluating J.H.'s credibility.[2] <u>Green</u> requires reversal here.

Second, the majority asserts that the witness in <u>Green</u> "refused to testify at trial out of fear for his safety," citing the People's wholly speculative assertion in that case that "it would not be 'too far of a stretch of the imagination to blame the defendant[]' for the witness's refusal to testify, based in part on the 'climate of fear' in the neighborhood" (majority op at 11 & n 4). Courts must rely on evidence, not stretches of the imagination, and there was no evidence that either Mr. Green or his co-defendant had done anything to cause the witness's inability to recall the events. Putting that aside, the trial court granted the defense's request for a limiting instruction as to the grand jury testimony and instructed the jury that reason the testimony was being read into the record had "nothing to do with

---

[2] The application of CPL 670.10 cannot possibly turn on whether the cross-examination is conducted in camera, to spare a child the trauma of testifying in open court; certainly nothing in the statute would permit that distinction. Nor can its application turn on whether counsel chooses to cross examine or the extent of that cross-examination; if that were a sound basis to distinguish <u>Green</u>, all defense counsel need do in the future to block the introduction of grand jury testimony would be to decline to cross-examine the witness or conduct a perfunctory cross-examination.

the parties in this litigation. They have nothing to do with anyone being unavailable by reason of conduct of anybody." The majority's observation that our decision in <u>Geraci</u>, which detailed the requirements for allowing the introduction of grand jury testimony when a defendant was responsible for a witness's refusal (or claimed inability) to testify (majority op at 11 n 4 [citing <u>People v Geraci</u>, 85 NY2d 359, 366 [1995]), came after <u>Green</u> is irrelevant. The People had no evidence that Mr. Green or his co-defendant had anything to do with the witness's inability (or unwillingness) to testify, and the trial court's expression of its understanding of the substantive law governing such a showing was entirely consistent with <u>Geraci</u>.

Third, the majority asserts that <u>Green</u> is distinguishable because there, the People "fail[ed] to lay any foundation that the out-of-court statement was admissible either under CPL 670.10 or as a past recollection recorded" (majority op at 13). That distinction, too, is without merit. As the majority acknowledges, the trial court in <u>Green</u> held that the grand jury testimony was admissible under the residual exception to the hearsay rule based on its trustworthiness and probative value. In reversing, we did not hold that the grand jury testimony was inadmissible because the court's analysis on the residual hearsay exception was incorrect. Rather, we held that its admission violated CPL 670.10 (<u>see</u> <u>Green</u>, 78 NY2d at 1030). The same result should apply here. Whether Lieutenant Cosgrove's grand jury testimony met the requirements for admission under the hearsay exception for a past recollection recorded is irrelevant because CPL 670.10 barred its admission.

Until now, we have consistently understood CPL 670.10 as standing for "a general rule [that] the Grand Jury testimony of an unavailable witness is inadmissible as evidence-in-chief (see, People v Green, 78 NY2d 1029; People v Gonzalez, 54 NY2d 729; CPL 670.10)" (People v Geraci, 85 NY2d 359, 365 [1995]). For example, in People v Harding (37 NY2d 130, 133 [1975]), we refused to permit the admission of prior testimony taken in a police disciplinary proceeding, even though that testimony was under oath, subjected to cross-examination, and the witness had died in the interim. We explained CPL 670.10 "only permits the use of testimony previously taken in certain, specified criminal judicial proceedings." Likewise, in People v Ayala (75 NY2d 422, 429 [1990]), we held it was error to introduce an unavailable witness's prior testimony given in court and under oath and subject to cross-examination at a Wade hearing, because:

> "[A]lthough CPL 670.10 is '[largely] a codification of common-law' principles (People v Arroyo, supra, at 569), this court has already rejected the argument that the statutory terms and their fair import are not exclusive (People v Harding, supra, at 133-134). As the court has noted, the statute contains 'three carefully worded and enumerated exceptions' to the general rule excluding hearsay evidence (id., at 134), suggesting that the Legislature intended the statute's reach to be relatively narrow and limited to its precise terms. Further, the general rule that '[in] criminal matters the courts must be more circumspect' (id., at 134) counsels against a construction that would extend CPL 670.10 well beyond the 'fair import' of its language."

(Cf. Crawford, 541 US at 53-54 ["the common law in 1791 conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. . . . The numerous early state decisions applying the same test confirm that these principles were received as part of the common law in this country."])

The First Department summarized our controlling caselaw thus:

"New York has modified the common-law rule that prior testimony is generally inadmissible as constituting hearsay when offered for its truth by allowing testimony given at certain prior proceedings to be admitted at a subsequent proceeding, provided that the witness is 'unable to attend' the subsequent proceeding because of 'death, illness or incapacity, or [because the witness] cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court' (CPL 670.10 [1]). In the instant matter, even if the mother were found to be unavailable due to 'incapacity' (see, e.g., People v Muccia, 139 AD2d 838, 839, lv denied 72 NY2d 960), a rather dubious proposition, the statutory exception to the common-law rule would still be unavailable since it is limited to three types of prior proceedings--previous trials, preliminary hearings conducted pursuant to CPL 180.60 and conditional examinations taken pursuant to CPL article 660. (See, CPL 670.10 [1].) These three classes of prior testimony rendered admissible in criminal proceedings by CPL 670.10 'are exclusive'. (People v Green, 78 NY2d 1029, 1030.) As the Court of Appeals noted in People v Geraci (85 NY2d 359), in reaffirming the holding in Green, not only is Grand Jury testimony not mentioned in CPL 670.10, but such testimony 'is especially troubling because 'although given under oath, [it] is not subjected to the vigorous truth testing of cross-examination'' and it 'is often obtained through … conditions which tend to impair its reliability', such as 'leading questions and reduced attention to the rules of evidence.' (People v Geraci, supra, at 368.)" (People v Concepcion, 228 A.D.2d 204 (1st Dept 1996]).

The admission of Lieutenant Cosgrove's grand jury testimony fails both parts of CPL 670.10: he was not "unable to attend" as defined in that statute, and his grand jury testimony fell into none of the enumerated exceptions. Instead, it violated our settled decisional law, rooted in the common law, prohibiting the introduction of grand jury testimony in the People's case in chief.

III.

In an attempt to bypass CPL 670.10 and Green, the majority proposes to read CPL 670.10 in an unsupportable manner, claiming that when a witness is available, any sort of prior testimony fitting within a hearsay exception may be offered into evidence (majority op at 11). Putting aside, for a moment, that that claim is wholly incompatible with Green

(as explained above) [3], it is also wholly incompatible with the common-law prohibition against trial by out-of-court testimony.  The availability of a witness does not remove the strictures of 670.10; instead, it means that one of its requirements for the "[u]se in a criminal proceeding of testimony given in a previous proceeding" has not been met.

CPL 670.10 (1) provides that certain, specified kinds of prior testimony "may, where otherwise admissible" be received into evidence at a subsequent proceeding "when at the time of such subsequent proceeding the witness is unable to attend" for certain, specified reasons.  The majority reads this language to mean that where the witness is able to attend, CPL 670.10 imposes no restrictions whatsoever on the use of the witness's prior testimony.  That reading of the statute is irreconcilable with our holding in Green, as explained, because J.H. not only was available, but attended and testified at trial, and yet we held that admission of his grand jury testimony violated CPL 670.10.  Under CPL 670.10, the unavailability of the witness to testify at trial is a prerequisite to using the witness's prior testimony as a substitute for the witness's live testimony with respect to the events in question.[4]

---

[3] Even under the majority's interpretation that CPL 670.10 is irrelevant if a witness is available, Green nevertheless dictates the result here, because it holds that a witness (like J.H. in Green or Lieutenant Cosgrove) who testified before a grand jury but now lacks recollection from which to testify is governed by CPL 670.10.  Whatever construction of CPL 670.10 one chooses, Green is indistinguishable, and its holding controls this case.

[4] The title of CPL 670.10 confirms that it applies to all circumstances in which prior testimony is sought to be introduced in a criminal trial: "Use in a criminal proceeding of testimony given in a previous proceeding; when authorized."  "The title of an act is like a label; it defines the scope of the enactment and gives notice of the purpose which its sponsors had in mind" (McKinney's Cons Laws of NY, Book 1, Statutes § 13 [citing Matter of Reciprocity Bank, 22 NY 9 (1860)]).

Inasmuch as we have held that CPL 670.10 was "[largely] a codification of common-law' principles", <u>Crawford</u> (541 US 36) is instructive. The Supreme Court expressly stated that hearsay exceptions, such as the doctrine of past recollection recorded, cannot be used to evade the common-law proscription of the use of prior testimony that fails to satisfy <u>both</u> requirements of (a) unavailability of the declarant, and (b) the right to have cross-examined the prior testimony when given – the very conditions set out in CPL 670.10::

> "there is scant evidence that [hearsay] exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case. Most of the hearsay exceptions covered statements that by their nature were not testimonial--for example, business records or statements in furtherance of a conspiracy. We do not infer from these that the Framers thought exceptions would apply even to prior testimony." (541 US at 56).

<u>People v Taylor</u> (80 NY2d 1, 6 [1992]), on which the majority relies, presents a paradigmatic example of the past recollection recorded exception's proper use: it involves the admission of an out-of-court <u>nontestimonial</u> statement, not prior testimony. There, we precisely stated the exception's sweep: "a memorandum made of a fact known or an event observed in the past of which the witness lacks sufficient present recollection may be received in evidence as a supplement to the witness's oral testimony" (<u>id.</u> at 8). Introduction of the slip of paper on which a percipient witness wrote down a license plate number (or, in <u>Taylor</u>, use of a detective's note recording the license plate number when the witness relayed the plate number to the detective), is the kind of nontestimonial out-of-court statement that supplements a witness's oral testimony where present recollection is

lacking.  Nothing about <u>Taylor</u> suggests that grand jury testimony may be read into the record as a past recollection recorded if a witness's memory has failed.  Indeed, Supreme Court tacitly recognized the impropriety of reading Lieutenant Cosgrove's grand jury testimony into the record when it instructed the jury that the testimony was "not of itself independent evidence of the facts contained therein. It is auxiliary to the testimony of the witness," though the live testimony contained nothing of substance.  There is a certain irony in the majority's explanation of the Past Recollection Recorded doctrine as requiring that such evidence be admitted "not [as] independent evidence of the facts contained therein, but [as] supplementary to the to the testimony of the witness) (majority op at 7), when the witness has no substantive testimony to supplement.

The majority's decision takes a large step towards reinstating the very procedures the common law deemed illegitimate: trial by declaration or affidavit.  In doing so, it turns our common-law and statutory rules on their head, admitting that the grand jury testimony of a dead witness could not be offered at trial for the truth of the matters contained therein, but permitting the wholesale introduction of prior testimony not subjected to cross-examination if the witness is alive.  For several hundred years and for good reason, we have not let the government secure the testimony of witnesses in private examinations and introduce those at trial to convict the accused.  A witness's lack of memory at the time of trial does not render such testimony any more reliable or less threatening to the rights of the accused than the introduction of that testimony when a witness has perfect recall; indeed, it has a greater potential to undermine the rights of the accused because of the

impairment of the scope of cross-examination.  It makes no sense to permit more hearsay when a witness is available.

The majority offers several unsatisfying explanations as to why its decision will not facilitate the wholesale introduction of prior testimony that has not been tested by cross-examination.  First, again reciting that such testimony would be admitted "not [as] independent evidence of the facts, but [] merely supplementary to the witness's trial testimony" (majority op at 13 n 6) ignores two points: (a) when the witness lacks all recall of the events, there is no testimony to supplement; and (b) a jury cannot possibly make a distinction between admitting Lieutenant Cosgrove's grand jury testimony as "supplementary" versus "independent evidence of the facts".  Here, no one could make that distinction, and no one has: the lower courts and the majority treat Lieutenant Cosgrove's grand jury testimony as independent evidence of the facts to which he testified.  As explained later, certain of those facts appear nowhere else in the record and are essential to maintaining the conviction for first-degree assault.

Second, the majority offers that "the jury . . . will take memory loss into account in its calculus of the weight that should be accorded to that witness's testimony" (id.).  That might be meaningful in a case such as United States v Owens (484 US 554 [1988]), where the witness had a partial memory and his memory was impaired to some degree by the attack he suffered.  In the case of the grand jury testimony of a police officer who testifies truthfully that he no longer has any recollection because of the passage of time, but who was under oath and testified truthfully before the grand jury when he did recall the incident,

the jury has no basis to question the accuracy of the testimony based on memory loss. It is hard enough to remember details about a meeting one attended or a movie one saw a few weeks ago; many of the cases on our docket involve gaps between incident and trial of several years (in this case, more than four). No one is suggesting that the majority's decision will cause witnesses to "feign memory loss" (majority op at 14 n 6). Heretofore, the grand jury testimony of witnesses who had no memory by the time of trial could not be introduced as evidence in the People's case in chief. The problem occasioned by the majority's decision is its facilitation of convictions based on testimony that has not been subjected to cross-examination, which is anathema to our system of justice.

Third, the majority's example that the rule that "prior consistent statements [of a witness are] generally inadmissible unless proffered to rebut a claim of recent fabrication" (id.) will restrict the use of grand jury testimony is quite odd: its consequence is that where the witness has no affirmative testimony to offer, the grand jury testimony is admissible, but where the witness vividly recalls the details, the grand jury testimony will not be admitted. If we remember that the purpose of trial is to determine the truth, we would be much better off admitting grand jury testimony where the witness recalls the details vividly and can be cross examined, than admitting grand jury testimony where the witness remembers none of the details, and the substance of the testimony cannot be cross examined.

IV.

"Errors of law of nonconstitutional magnitude may be found harmless where "the proof of the defendant's guilt, without reference to the error, is overwhelming" and where there is no "significant probability . . . that the jury would have acquitted the defendant had it not been for the error" (People v Byer, 21 NY3d 887, 889 [2013] [quoting People v Crimmins, 36 NY2d 230, 242 (1975)]). The evidence that Mr. Tapia was guilty of attempted assault in the second degree was substantial, but as to assault in the first degree, it was not. The victim had a slash on his face, which led the People to pursue a theory involving the use of a deadly weapon. The jury was asked to convict on two theories, either Mr. Tapia himself assaulted the victim with a deadly weapon, or that Mr. Tapia acted in concert with the other attacker, who used a deadly weapon. With respect to these theories involving the use of a deadly weapon, the admission of Lieutenant Cosgrove's testimony was not harmless error.

As to the first theory, no witness saw Mr. Tapia with a weapon at any point during, before or after the assault. No weapon was found at the scene. The victim testified at trial that he did not know which of his attackers cut him or when he was cut. Although there was broken glass on the ground in the area where Lieutenant Cosgrove pulled Mr. Tapia away from the victim, the police did not look for blood on the glass or see any blood on Mr. Tapia. There are no facts from which a jury could determine, beyond a reasonable doubt, that Mr. Tapia used a deadly weapon to cut the victim.

The acting-in-concert theory is a closer question, but I conclude the evidence of defendant's guilt was not so overwhelming that we could conclude that the error was harmless.  "[T]o be liable under an acting in concert theory, the accomplice and principal must share a 'community of purpose' " (People v Scott, 25 NY3d 1107, 1110 [2015], quoting People v La Belle, 18 NY2d 405, 412 [1966]).  The requisite "community of purpose" is not satisfied, where, for example, the evidence shows "a spontaneous and not concerted or planned use of [a] weapon" (People v Monaco, 14 NY2d 43, 45 [1964]).  Thus, if the People's evidence demonstrated only that Mr. Tapia and another assaulted the victim, but that the other assailant slashed the victim spontaneously and unexpectedly during the attack, that evidence would be insufficient to support Mr. Tapia's conviction for first-degree assault guilt under an acting-in-concert theory (see e.g. People v Akptotanor, 158 AD2d 694, 695 [2d Dept 1990], affd 76 NY2d 1000 [1990]).  On the other hand, we have held the "community of purpose" doctrine is satisfied where, for example, there is "evidence of prior planning and then active participation" (People v Brathwaite, , 63 NY2d 839, 842 [1984]), or the defendant was aware that a weapon was carried to the encounter from the outset (see People v Whatley, 69 NY2d 784, 785 [1987]), or the defendant was present when the principal approached the victim with the injury-causing weapon (see Scott, 25 NY3d at 1110).  However, the record is bereft of evidence that would fit under one of those precedents.

Here, the acting-in-concert claim hinges on a theory of the case for which we have no precise precedent: because Mr. Tapia assaulted the victim after the victim had been

slashed, Mr. Tapia was acting in concert with the slasher. That evidence alone does not overwhelmingly establish that Mr. Tapia acted in concert with the slasher. In any event, even if the evidence were overwhelming, the difficulty here is that Lieutenant Cosgrove's grand jury testimony provides the only evidence that Mr. Tapia was assaulting the victim after the victim had been slashed. His grand jury testimony also provides the sole support for the People's claim that Mr. Tapia was in a position to see that the victim had been slashed. Those facts are essential to supporting the second theory for conviction provided by the People.

Two Justices of the Appellate Division believed that, even with the inclusion of Lieutenant Cosgrove's testimony, the evidence could not support a conviction of first-degree assault. The jury convened for four days and submitted sixteen notes to the judge before reaching a verdict. The factfinders in the proceedings below clearly considered this case a close question when Lieutenant Cosgrove's grand jury testimony was part of the record. Thus, because it was error to admit that testimony, the error here cannot be said to be harmless.

For the above reasons, I would reverse the judgment and grant defendant a new trial.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed. Opinion by Chief Judge DiFiore. Judges Stein, Garcia and Feinman concur. Judge Wilson dissents in an opinion in which Judges Rivera and Fahey concur.

Decided April 2, 2019